20h 413
L-ed 944
21h 446
23h 500
1wa316
2wa704
· 2wa706
2wa724

·THE UNITED STATES, APPELLANTS, *v.* CHARLES FOSSAT.·

Where a petitioner files a claim to land in California before the board·of commissioners created by Congress, the intervention of rival claimants is a practice not to be encouraged.

Where there is no natural boundary or descriptive call for the termination of lines of a tract of land, and the quantity of land called for in the grant is "one league of the larger size, a little more or less," the survey must only include a league. The words "a little more or less" must be rejected. ·

The grant is for one league of land, to be taken within the southern, western, and eastern boundaries designated therein, and to be located at the election of the grantee or his assigns, under the restrictions established for the location and. survey of private land claims in California by· the Executive department of this Government.

[MR. CHIEF JUSTICE TANEY, BEING INDISPOSED, DID NOT SIT IN THIS CASE.]

THIS was an appeal from the District Court of the United States for the northern district of California. ·

Fossat claimed an interest of three-fourths in the tract of land granted to Justo Larios by Governor Alvarado, on the 1st of August, 1842. The mesne conveyances need not be stated, as the only dispute in this court related to the location of the land.·

In June, 1842, Larios presented a petition to the Governor, stating that he had previously presented one in 1836, and another in 1840, both of which were lost. He stated that he had purchased a house upon the premises, and resided there since 1836. Whereupon, the following grant was issued:.

*Juan B. Alvarado, Constitutional Governor of the Californias:*

Whereas the citizen Justo Larios has asked, for his own benefit and that of his family, the land known by the name of the Capitancillos, bounded by the sierra, by the Arroyo Seco, on the side of the establishment of Santa-Clara, and by ·the rancho of citizen José R. Berreyesa, which has for boundary a line running from the junction of the Arroyo Seco and Arroyo de lós Alamitos, southward to the sièrra, passing by the eastern base of the small hill situated in the centre of the cañada, the necessary steps having been taken and inquiries made, according to the laws and regulations on this subject,· by virtue of the powers conferred upon me, in the name of the Mexican nation I have granted him the said land, declaring it his property by these presents, subject to the approval of the Departmental Assembly and to the following conditions:

1st. He may enclose it without injury to the passes, roads, and servitudes; he may ·enjoy it freely and exclusively, using

or cultivating it as may best suit him, and within one year he shall build a house, and it shall be inhabited.

2d. He shall solicit the proper judge to give him juridical possession, in virtue of this decree, by whom the boundaries shall be marked out, and he shall put on the boundaries, in addition to the landmarks, some fruit trees or useful forest trees.

3d. The land herein referred to is one league of the larger size, a little more or less, as is explained by the map accompanying the espediente. The judge who shall give the possession shall have it measured, in conformity to law, leaving the surplus which remains to the nation, for the purposes which may best suit it.

4th. If he should violate these conditions, he shall lose his right, and liable to be denounced by another.

Wherefore I order that this title, being held firm and valid, shall be registered in the book of adjudications of vacant lands, and delivered to the person interested, for his protection and other purposes.

Given in Monterey, the 1st of August, 1842.

The reporter will endeavor to give the reader an idea of the locality without a map, which it would be difficult to make.

Let him imagine himself standing upon a range of hills or sierra about three thousand feet above tide. Looking to the north, he sees another range of hills about half as high as the one upon which he stands, and running nearly parallel therewith. The two ranges are connected together by a spur, running from one to the other, and from either side of this spur springs flow, which, running down ravines to his right and left, find their way around the lesser hills in front. Upon his left hand, the spectator may be supposed to trace the Arroyo Seco, which is Larios's boundary on that side; and upon his right he may see the marked line which had been mutually agreed upon by Larios and his neighbor Berreyesa as the separating line between them, and which constituted Larios's boundary upon that side. Thus standing at one end of a narrow parallelogram, the spectator may see the two lines upon his right and left, looking indefinitely into the distance for the closing line.

In this state of things, two questions arise:

1st. Which is the sierra where the tract of land begins? Is it the range of hills upon which we have supposed the spectator to stand, or the lesser range in front, called "Lomas Bajas."

2d. How far does the tract run in the direction where no boundary is given? Does it run as far as the dividing line is laid down between Larios and Berreyesa, or does it stop where

the quantity of land called for in the grant is obtained? The board of commissioners adopted the former rule, and therefore continued the tract up to the Arroyo Seco, which was the termination of the boundary line between Larios and Berreyesa. It may not be easy for the reader to apprehend precisely the different decisions hereafter referred to, because the points of the compass did not exactly correspond with those heretofore mentioned in the general view which a spectator is supposed to take from the top of the sierra.

The decree of the commissioners was as follows:

## Decree.

### CHARLES FOSSAT *v.* THE UNITED STATES.

In this case, on hearing the proofs and allegations, it is adjudged by the commission that the claim of the said petitioner is valid, and it is therefore decreed that the same be confirmed.

The land of which confirmation is hereby made is a portion of the place known by the name of Los Capitancillos, situated in Santa Clara county, and the same which was formerly occupied by Justo Larios, and the portion thereof hereby confirmed to the petitioner is bounded and described as follows, to wit:

On the south, bounded by the sierra; on the north, by the Arroyo Seco; on the west, by the middle of the ridge of the low hills running north and south, (which hills lie at the western end of said rancho los Capitancillos,) and the said division line being the same line of division adopted in a partition of said rancho, made by William Wiggins, and John B. Weller, and James M. Jones, as will appear by their deeds of partition recorded in the office of the recorder of deeds for Santa Clara county, in liber "C" of deeds, page 458; and on the east, by the place known as the rancho of the citizen José R. Berreyesa, which has for boundary a line running from the junction of the Arroyo Seco and Arroyo de los Alamitos, southward to the sierra, passing by the eastern base of the small hill situated in the cañada.

The said premises containing three-fourths of a square league of land, a little more or less; reference to be had to the grant of said rancho to said Justo Larios, and to the map which constitutes a part of the espediente, which are on the file in this case.

ALPHEUS FELCH,
THOMPSON CAMPBELL,
R. AUG. THOMPSON,
*Commissioners.*

Filed in office, February 28, 1854.
(Signed)                    GEO. FISHER, *Secretary.*

The United States appealed from this decision to the District Court of the United States for the northern district of California.

In that court there were a number of depositions and plats filed.

In August, 1857, that court passed the following decree, by which it will be seen that the tract of land was ordered to begin at the higher range of hills, and to run as far as the boundary line reached which had been adopted by Larios and Berreyesa:

### Transcript from Board of Commissioners, No. 340.

THE UNITED STATES, APPELLANTS, *v.* CHARLES FOSSAT, APPELLEE.

### STATED TERM, JUNE, 1857.

On appeal from the final decision of the board of commissioners to ascertain and settle private land claims in the State of California.

### — *Decree.*

This cause came on to be heard at a stated term of the court, on appeal from the final decision of the board of commissioners to ascertain and settle the private land claims in the State of California, under the act of Congress approved on the 3d of March, A. D. 1851, upon the transcript of the proceedings and decision of the said board of commissioners; the papers and evidence on which the said decision was founded, the petition of the appellants and answer of the appellee, and the further evidence given in this court, by leave of the court, and it appearing to the court that the said transcript has been duly filed according to law, and the appellee in open court confessing error in the said decision of the board of land commissioners, in this, that it does not describe in a manner sufficiently definite the boundaries of the tract of land intended to be confirmed to the claimant; and consenting that the said decision be reversed, and such decree be entered in this court as may be lawful and proper upon the whole evidence; and counsel for the respective parties having been heard, it is by the court hereby ordered, adjudged, and decreed, that the said decision of the board of land commissioners be, and the same is hereby, reversed.

And the court now proceeding to render a new decree in the premises, it is further hereby ordered, adjudged, and decreed, that the grant made to Justo Larios, from whom the appellee, Charles Fossat, derives his title, is a good and valid grant to said Larios of the place known by the name of Los Capitancillos, situated in the present county of Santa Clara, and formerly occupied by the said Justo Larios, and bounded and described as follows, to wit: On the south by the main sierra,

on a spur of which sierra is situated, as shown in evidence, a certain well-known and conspicuous live-oak tree, or enciño, and a portion of which sierra is separated, as shown in evidence, by the stream called the Arroyo de los Capitancillos, from the range of hills called Cuchilla de la Mina, or Cuchilla de la Mina de Luis Chabolla, in which are situated the quicksilver mines known as the Guadalupe, San Antonio, and New Almaden mines; on the west by the Arroyo Seco, on the side of the establishment of Santa Clara, the said Arroyo Seco being the continuation of the same stream above designated as the Arroyo de los Capitancillos; on the east by a line running from the junction of a certain other rivulet called Arroyo Seco, and the Arroyo de los Alamitos, southward to the aforesaid main sierra, passing by the point or part of the small hill situated in the centre of the cañada which is designated, in the espedientes and grants of Justo Larios and José Reyes Berreyesa, as La Falda de la Loma, and crossing the range of hills designated above as the Cuchilla de la Mina, or Cuchilla de la Mina de Luis Chabolla, and in which are situated the said Guadalupe, San Antonio, and New Almaden mines, and which is the same range of hills designated Lomas Bajas on the diseño, or map, in the aforesaid espediente of José Reyes Berreyesa, the said eastern line herein described being intended to be the same line agreed upon as the line of division between the lands of Justo Larios and José Reyes Berreyesa, as expressed in the respective espedientes and grants of said Justo Larios and José Reyes Berreyesa, and delineated by the dotted line on the said diseño, or map, in the espediente of José Reyes Berreyesa; in the location of said line, reference to be made to the description thereof in the said espedientes and grants, and the delineation thereof on the said diseño, or map, in the espediente of José Reyes Berreyesa; which espedientes, grants, and diseño, or map, are on file and in evidence in this case; and the northern boundary of said tract of land granted to Justo Larios being the same which is shown in the diseño, or map, contained in the espediente of Justo Larios, which is on file and in evidence in this case, the said tract of land containing one square league, more or less.

And it is likewise further ordered, adjudged, and decreed, by the court, that the claim of the appellee to a portion of the said described tract of land is a good and valid claim, and that the said claim be, and the same is hereby, confirmed.

The land of which confirmation is hereby made to the appellee is the whole of the tract of land described above, and which was granted to Justo Larios, with the exception of the two adjacent parcels thereof lying at the westerly end of said

tract, and claimed by the Guadalupe Mining Company, and which were conveyed to the said Guadalupe Mining Company by the two instruments of writing which are on file and in evidence in this case, and marked, respectively, "Exhibit M" and "Exhibit P;" the line dividing the land intended to be confirmed hereby to the said Charles Fossat, from the land of the said Guadalupe Mining Company, being the same which is expressed in said exhibits to be the eastern line of the tracts thereby severally conveyed, and the same which is more particularly designated as the eastern line of the lands of the Guadalupe Mining Company by the survey made by John La Croze, whose deposition, with the field notes of said survey attached, is on file and in evidence in this case, and delineated on the map of said survey, certified by John C. Hayes, U. S. Surveyor General, which is also on file and in evidence, marked "Exhibit I M," attached to the deposition of John La Croze, to which exhibits, map, deposition of John La Croze, and field notes, reference is made for a more full description of the said line, which is the western line of the land hereby confirmed to the said appellee, Charles Fossat.       OGDEN HOFFMAN,
*U. S. Dist. Judge.*

*August* 17, 1857.

The United States appealed from this decree to this court.

It was argued by *Mr. Gillett* and *Mr. Reverdy Johnson* for the United States, with whom were the Attorney General and *Mr. Rockwell,* and by *Mr. Badger* and *Mr. Bayard* for the appellee, with whom were *Mr. Carlisle* and *Mr. Stanton.*

It is not possible to do more than merely state the points assumed by the counsel. The arguments from geographical considerations and those founded on authorities must necessarily be omitted.

It has already been mentioned that the two questions which arose in the case were—

1st. Whether more land could be given than the quantity called for in the grant.

2d. Where was the sierra at which the location was to begin?

Upon the first branch, the counsel for the United States made the following points:

I. The decree of the District Court confirming this claim to the entire amount included in the boundaries of the tract, without regard to the quantity, is erroneous.

II. By the law in force in Mexico when this grant was made, and for a long time prior to that time, a grant like the one in

question was regarded as a grant of a certain quantity of land within the boundaries named, to be ascertained by measurement and separated from the residue of the tract, which residue or surplus continued to be the property of the nation.

III. This clause requiring the survey, and that the surplus shall remain to the nation, is embraced in most of the California grants, and has received an almost uniform construction by all the tribunals which have been called upon to adjudicate upon these claims. The decision of the commissioners has been uniform, that a grant like the present was only a grant of a quantity of land to be ascertained by measurement, and not a grant by metes and bounds. The same has been the decision of the Circuit Court, and in most cases by the District Court, and these decisions of the commissioners and District Court have been sustained by the Supreme Court of the United States in the cases which have been to that court, although the question was not expressly raised in these cases, nor does it appear that the counsel or court doubted it.

IV. In this very case of Fossat, the commissioners in their opinion regard the grant in this case as one of quantity, and only for one league.

V. Such we claim is the rule according to the law governing the case, yet these views are, we think, strengthened by the principles which prevail at common law in relation to public grants generally, and especially as to the construction of a grant like the one in question.

VI. It is true, as a general rule at common law, that in conveyances between individuals, monuments and definite boundaries are to control in preference to quantity, where the difference of quantity named in a deed does not greatly vary from the amount included within the boundaries, especially when the words "more or less," or "be the same more or less," are used; but this rule does not prevail where the boundaries are not definite, or where the excess or deficiency is large. Nor would the rule apply where the grant was from the Government, nor in a case like the present, where the words are, "a little more or less."

VII. The rule in relation to the survey of confirmed claims under the statute, and the practice adopted by the executive department of the Government, show that the decree of the District Court is erroneous. (9 Stat. at L., 633.)

On the second branch of the subject, the counsel contended that this grant was void for uncertainty, and could not be located. They also contended that the location should not commence at the highest range of hills, which we have seen was on the extreme south.

The southern boundary. The grant calls for the sierra. In the diseño, the only ranges of hills or mountains shown are the Lomas Bajas on the north, and a range on the south, designated as Sierra del Enciño.

It is in proof, and not denied, that between these two ranges is a valley called the Cañada de los Capitancillos, in which was the house of Justo Larios, and that the eastern and western boundaries being defined, this part of the cañada contained about one square league.

There is no evidence whatever of any possession or occupation by Justo Larios of any land beyond these limits.

This embraced the whole of the cañada between the eastern and western boundaries of this rancho.

The western portion of the same cañada was the rancho of Berreyesa, which was by a grant of a similar kind, with a description by metes and bounds in the body of the grant, but limited to one league, and which he himself described as a grant of "one league only." We claim on behalf of the United States that this cañada was alone granted—that it is bounded on the south by the highland, and only highland in that direction, represented on the diseño; that either as the sierra mentioned in the grant, or the Sierra del Enciño as named in the diseño, it was clearly designed as the southern boundary of the tract.

The claimants contend that there is at a point much further south a live oak, an enciño, at a considerable elevation, which is more properly called Sierra del Enciño; and that the hills or mountains lying north of it, and on which are the New Almaden mines, are included in the grant. We will examine this question of boundary in reference to the language of the grant alone. 2. In connection with the diseño or map of Justo Larios. And 3. In view of any evidence connected with the claim of Berreyesa.

[The counsel then went into a minute examination of these several points.]

The counsel for the appellee had to establish the three following points:

I. That the land of Larios had to begin at the range of high hills, (where we placed the spectator in the beginning of this report,) instead of the lesser range of hills.

II. That it had to run as far as the boundary line which had been established between Larios and Berreyesa.

III. That by the insertion of the words "a little more or less" in the grant, it was intended that the grantee should not be confined to a league.

1. At the time when Larios obtained his grant, he presented a map or diseño upon which were depicted, in a very rough way, the boundaries of the land he was soliciting. Upon this map there was a representation of hills, marked Sierra del Enciño, or Sierra of the Live Oak, and upon the plat introduced upon the argument there was marked the locality of a large oak tree, which some of the witnesses said could be seen for many miles off.

2. Upon this point the remarks of the counsel were as follows:

A corresponding grant to Berreyesa had been made on the 20th of August. The boundaries of this grant are as follows:

"A part of the place called Cañada de los Capitancillos, bounded on the north by the Low Hills (Lomerias Bajas) in the vicinity of the plain of the town of San Jose; on the south by the mountain, (sierra;) on the east by the Laurel-tree Hills, (Lomerias del Laurel;) and on the west by the rancho of the citizen Justo Larios, which has for a boundary the angle which the Arroyo Seco (Dry Creek) forms with that of the Alametos' (Little Poplar's) direction; southward the eastern base of the low hill situated in the centre of the valley, (cañada,) until reaching the sierra."

On comparing these grants, it appears that the sierra is called for as the boundary of both—the Pueblo Hills form the northern boundary of both. The division line between them is described in both grants as beginning at the same point, the junction of the Arroyo Seco with the Alametos, and extending southward until reaching the sierra, passing the eastern slope of the lometa or small hill in the centre of the cañada. The rancho of one is called for in the other's grant as its abuttal. The division line extending from the junction of the Alametos with the Arroyo Seco, until reaching the sierra, is in Berreyesa's grant declared to be the boundary of Larios's rancho, while in Larios's grant the same line is designated as the boundary of Berreyesa's rancho.

Both ranchos had exactly the same boundary on the south, the southern boundary of both being the same sierra, named in the diseño of one Sierra Azul, and by the other, Sierra del Enciño.

3. As to the quantity of land which was conveyed by the grant, there is room only to insert the two first points, which were as follows:

In the District Court, the counsel for the New Almaden Company sought to limit the quantity to the exact measure of one square league, and no more. By the official survey, the quantity within the boundaries confirmed by the court is one league and a fraction of about three-fourths of a league.

The point made by the New Almaden Company rests upon the following condition annexed to the grant:

"2. The land herein referred to is one league of the larger size, a little more or less, as is explained by the map accompanying the espediente. The judge who shall give the possession shall have it measured, in conformity to law, leaving the surplus which remains to the nation, for the purposes which may best suit it."

To this point it is answered:

1. The direction to the judge to "have it measured in conformity to law, leaving the surplus which remains to the nation," is a formal direction, accompanying most, if not all, California grants, and does not in this case limit or define any precise quantity. This direction is annexed to grants, whether there be or be not any surplus, and it does not import that any surplus will remain.

The surplus to be left to the nation is what remains after "it," viz: "the land herein referred to" shall be measured. But the "land referred to" is one league of the larger size, a little more or less, as is explained by the map accompanying the espediente. No exact quantity is expressed in the condition, but reference is made to the espediente as explaining what has been granted and is to be measured. The condition therefore expresses an indeterminate quantity, to be made certain by measurement according to the boundaries defined in the grant itself, in connection with which the condition is to be interpreted, and by the map to which reference is made. The words "a little more or less" following the words "one league of the larger size," repel the idea that exactly one league and no more was intended; for if that exact quantity was meant, the words "a little more or less" would not have been added.

In every California case decided by the Supreme Court, it has been held that the subsequent conditions could not defeat the precedent grant. And although a limitation of quantity clearly expressed may restrict prior terms of larger import, yet, in the absence of clear expression, such restriction is not to be imposed. It is a fundamental rule of construction, that a consistent and reasonable effect is to be given, if possible, to *all* the words of a written instrument. The addition of the words "a little more or less," implies some meaning in the grantor— for *explanation* of that meaning, distinct reference is made by the condition itself to the diseño. The grant, then, is for land not limited to an exact quantity by the condition, but "as is explained" in the diseño. The grantor used words having some meaning, and referred to a particular document to ex-

plain, and which does explain, that meaning consistently with the boundaries specified in the body of the grant; the words therefore cannot be rejected, nor the condition construed as if they were stricken out.

In the case of The United States v. Larkin et al., 18 How., 561, the Supreme Court held that "the plan or sketch in the espediente, in connection with the description given in the grant, furnishes all the materials essential to determine the boundaries." That creeks, hills, and mountain ranges, exhibited on the maps or diseño, and referred to in the grant, are adequate monuments, and define boundaries of California grants with sufficient certainty, was decided in Pedrorena's case. (19 How., 365.)

No principle of law is better settled, than that designated boundaries called for in a grant control in general the quantity of land that passes by the grant.

Of the multitude of cases on this point, reference to a few only need be made. "Where the boundaries of land are fixed, known, and unquestionable monuments, although neither courses nor distances, nor the computed contents, correspond, the monuments must govern." (6 Mass., 131; 2 Mass. Rep.; 380; 5 Pick. Rep., 135; 6 Wheat., 582; 8 Wend., 183; 1 U. S. Dig., Bound., 474, and cases cited.)

"Where a deed describes land by its admeasurement, and at the same time by known and visible monuments, these latter shall govern. "(4 U. S. Dig., Bound., and cases cited; Cleveland v. Smith, 2 Story, 278; Nelson v. Hall, 2 McLean, 518.)

"In locating lands, well-ascertained natural or artificial boundaries are to prevail over course, distance, and quantity; and although the boundaries included 136,000 acres instead of 14,900, the number called for by the deed, the boundaries were held to govern." (Sturgeon v. Floyd, 3 Rich, 80.)

An illustration of this rule is furnished by an early decision of the Supreme Court of the United States, Lodge's Lessee v. Lee, 6 Cranch, 237, where a grant of an island by name, superadding courses, distances, and quantity, which were found to exclude a part of the island, was held to pass the whole island, without regard to the courses, distances, and quantity, called for by the deed. (6 Cranch, 237.)

But it is deemed needless to multiply authorities upon a rule of law so well established.

Mr. Justice CAMPBELL delivered the opinion of the court.

The appellée presented to the board of commissioners, appointed under the act of Congress of the 3d March, 1851, (9 Stat. at L., 632, ch. 41,) to settle private land claims in Cali-

fornia, a claim for three-fourths of a league of land, known as part of the Cañada de los Capitancillos. He produced to the board satisfactory evidence of the authenticity of a grant from the Governor of California, bearing date in 1842, to Justo Larios, for a parcel of land having that name; also that Larios had occupied, improved, and cultivated it, conformably to the conditions of the grant; that in 1845 he had sold it to a person from whom the appellee deduced his title to an undivided three-fourths interest, and that his share had been set apart to him by a valid conveyance. The board pronounced in favor of the validity of the grant, and rendered a decree of confirmation in favor of the claimant for land included in specific and well-defined boundaries, but adding as a part of the description the quantity that was embraced in them. It is somewhat doubtful whether the board designed to impose a limitation to the claim for the quantity thus declared. From this decree the United States appealed to the District Court. In that court the appellee confessed that the decree of the commissioners was erroneous, because it did not describe in a manner sufficiently certain the boundaries of the tract of land intended to be confirmed to the claimant, and consented that the decision should be reversed, and such decree be entered in the District Court as might be lawful and proper upon the whole evidence.

The claimant proceeded to examine a number of witnesses to identify the locative calls of the grant to Larios, and produced documentary evidence from the archives disclosing the circumstances under which the grant was asked for and obtained, in order to determine with exactness the subject on which it was designed to operate. He also procured a survey from the surveyor general of California, to exhibit the extent and description of the land included in the claims of those who now represent the rights of Larios. Much counter evidence was adduced under the direction of private and adversary claimants, to whom the law officers of the Government of the United States in California seem to have committed the preparation of the case on the appeal to the District Court, and who were allowed to maintain, in the name of the United States, the alternative of the issue tendered by the claimant.

The District Court confirmed the claim of the appellee to land limited by specific boundaries, and ascertained those boundaries, as they exist on the land, with precision. Under this decree, the grant to Larios includes seven thousand five hundred and eighty-eight and ninety-hundredths acres.

It is the opinion of the court that the intervention of adver-

sary claimants in the suit of a petitioner, under the act of 3d March, 1851, for the confirmation of his claim to land in California, is a practice not to be encouraged. The board of commissioners was instituted by Congress to obtain a prompt decision on the validity of private land claims, to enable the Government to distinguish the public land from that which had been severed from the public domain by Mexico; and that it might fulfil the obligation assumed at the time of the cession of California, to secure and protect the property of its inhabitants. The jurisdiction of the board of commissioners in the first instance, and the appellate jurisdiction of the courts of the United States, are limited to the making of decisions on the validity of the claim, preliminary to its location and survey by the surveyor general of California, acting under the laws of the United States. This officer is required to survey and to furnish plats of the claim that may be confirmed.

In reference to interfering and conflicting claims, he is authorized to decide by adopting the lines agreed to by the claimants; and in the absence of an agreement, to follow the rule of justice. The acts of Congress provide, that neither the decisions of the commissioners, nor of the District or Supreme Court, nor of the surveyor general, nor the surveys or patents made in pursuance of them, shall preclude a legal investigation and decision, by the proper judicial tribunal, between parties having such interfering claims; and provision is made in the act of 3d March, 1851, for a contest of the right of the confirmee before the issue of the patent, but after the location and survey; and a patent under the act is only conclusive between the United States and the claimant, and does not affect third persons. (9 Stat. at L., 631, ch. 41; 4 Stat. at L., 492, ch. 116, sec. 6.) The language and policy of these enactments limit a controversy like the present to the United States and the claimant.

We concur in the opinion of the board of commissioners and of the District Court, that affirms the validity of the grant of the Governor of California to Justo Larios, and the regularity of the conveyances through which the claimant deduces his title.

The papers in the record show, that in 1842 the proprietors of adjacent ranches in the valley de los Capitancillos (Larios and Berreyesa) had a dispute concerning the location of their line of separation, which was carried before the public authorities for settlement; that Larios, after the adjustment of the controversy, represented to the Governor that, since 1836, he had occupied his place in the cañada under a purchase from a former proprietor; that the records of his title had been lost,

and that he desired to obtain a grant which would declare his right. This petition was accompanied by a sketch of the property, and its contents were represented to be one league, a little more or less. The Governor made the necessary order for the issue of the grant, in conformity to the prayer of the petition, and the grant itself was issued in August, 1842. In the grant, the petition for the land known as Capitancillos—bounded by the sierra, by the Arroyo Seco on the side of the establishment of Santa Clara, and by the rancho of the citizen José R. Berreyesa, which has for boundary a line running from the junction of the Arroyo Seco and Arroyo de los Alamitos, southward, to the sierra, passing by the eastern base of the small hill situate in the centre of the cañada—is recited; and the Governor granted it to Larios, to be his property, subject to the approval of the Departmental Assembly, and to the performance of four conditions. The second and third of these conditions are:

"2d. He shall solicit the proper judge to give him judicial possession, in virtue of this decree, by whom the boundaries shall be marked out, and he shall put on the boundaries, in addition to the landmarks, some fruit trees or useful forest trees.

"3d. The land herein referred to is one league of the larger size, a little more or less, as is explained by the map accompanying this *espediente*. The judge who shall give the possession shall have it measured, in conformity to law, leaving the surplus which remains to the nation, for the purposes which may best suit it."

The southern, western, and eastern boundaries of the land granted to Larios are well defined, and the objects exist by which those limits can be ascertained. There is no call in the grant for a northern boundary, nor is there any reference to the diseño for any natural object, or other descriptive call, to ascertain it. The grant itself furnishes no other criterion for determining that boundary than the limitation of the quantity, as is expressed in the third condition. This is a controlling condition in the grant. The delivery of judicial possession, an essential ceremony to perfect the title in the land system of Mexico, was to be accommodated to it. The diseño presented by the donee to the Governor, to inform him of his wants, represents the quantity to be one league, a little more or less. This representation is assumed to be true by the Governor, and it forms the basis on which his consent to the petition is yielded. He prescribes to the officer to whom he confided the duty of completing the title, to measure a specified quantity, leaving the surplus that remains to the nation, as preparatory to the delivery of judicial possession to the

grantee.  The obligation of the United States to this grantee will be fulfilled by the performance of the executive acts, which are devolved in the grant on the local authority, and which are declared in the two conditions before cited.  We regard these conditions to contain a description of the thing granted, and, in connection with the other calls of the grant, they enable us to define it.  We reject the words "a little more or less," as having no meaning in a system of location and survey like that of the United States, and that the claim of the grantee is valid for the quantity clearly expressed.  If the limitation of the quantity had not been so explicitly declared, it might have been proper to refer to the petition and the diseño, or to have inquired if the name Capitancillos had any significance as connected with the limits of the tract, in order to give effect to the grant.  But there is no necessity for additional inquiries.  The grant is not affected with any ambiguity.  The intention of the Government of California is distinctly declared, and there is no rule of law to authorize us to depart from the grant to obtain evidence to contradict, vary, or limit its import.

The grant to Larios is for one league of land, to be taken within the southern, western, and eastern boundaries designated therein, and which is to be located, at the election of the grantee or his assigns, under the restrictions established for the location and survey of private land claims in California by the executive department of this Government.  The external boundaries designated in the grant may be declared by the District Court from the evidence on file, and such other evidence as may be produced before it, and the claim of an interest equal to three-fourths of the land granted is confirmed to the appellee.

The decree of the District Court is reversed, and the cause is remanded to that court, with directions to enter a decree conforming to this opinion.