# MORE v. STEINBACH.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

No. 176. Submitted February 9, 1888. — Decided April 16, 1888.

The act of Congress of March 3, 1851, " to ascertain and settle the private land claims in the State of California," 9 Stat. 631, c. 41, created a board of commissioners to which all persons, claiming land by virtue of any right or title derived from the Spanish or Mexican government, were required to present their claims for examination and determination within two years from its date, with such documentary evidence and testimony of witnesses as they relied upon to support their claims, and provided, in substance, that if upon examination they were found by the board, and by the courts of the United States, to which an appeal could be taken, to be valid, the claims should be confirmed and surveyed, and patents issued therefor to the claimants; but that all lands, the claims to which were not presented to the board within that period, should be considered as a part of the public domain of the United States. *Held,*

(1) That this provision requiring the presentation of their claims was obligatory on claimants, and that they were bound by the judgment of the board, if confirmed by the courts of the United States on appeal, and by the survey and location of the claim by the officers of the Land Department, following the final decree of confirmation.

(2) That the patent of the United States, issued after the claim was surveyed and located, is conclusive, both as to the validity of the title of the claimant and the extent and boundaries of his claim, as against all parties not claiming by superior title, such as would enable them to contest the action of the government respecting the property.

In order that a perfect title to land might vest under a grant from the Mexican government a delivery of possession by its officers was necessary. The proceeding was termed a judicial delivery of possession.

The authority and jurisdiction of Mexican officials in California terminated on the 7th of July, 1846. No alcalde appointed or elected subsequent to that date was empowered to give judicial possession of land granted by the previous government.

The doctrine that the laws of a conquered or ceded country, except so far as affected by the political institutions of the new government, remain in force after conquest or cession until changed by it, does not apply to laws authorizing the alienation of any portions of the public domain, or to officers charged under the former government with that power. No proceedings affecting the rights of the new government over public property could be taken, except in pursuance of its authority on the subject.

Under the Code of Civil Procedure of California a plaintiff asserting title to lands, though out of possession, may maintain an action to determine an adverse claim, estate, or interest in the premises.

THE case as stated by the court was as follows:

This is a suit in equity to determine the adverse claims of the defendants below, appellants here, to certain lands in the county of Ventura, in the State of California. One of the plaintiffs, Rudolph Steinbach, is an alien and a subject of the Emperor of Germany. The other plaintiff, Horace W. Carpentier, is a citizen of the State of New York. The defendants are all citizens of the State of California. In their complaint the plaintiffs allege that they are the owners in fee of the premises, which are fully described; that the defendants claim an estate therein adverse to them; that such claim is wholly unfounded and invalid in law or equity; and that its assertion depreciates the value of their title and property, and prevents them from using or selling the property, and otherwise harasses and annoys them in its possession and ownership. They therefore pray that the defendants may be required to set forth the grounds and nature of their claims and pretensions, that the court may determine each of them; and that it may be adjudged that they are unfounded in law and equity, and that the plaintiffs are the owners of the premises and entitled to their possession, and may have a writ of assistance for the possession of such portions as may be found to be in the occupation of the defendants, and for such other and further relief as may be just.

In their answer the defendants disclaim all interest in a portion of the premises, and deny that the plaintiffs have any estate in the residue. As to such residue, they admit that they claim an estate in fee simple therein, and aver that the defendant A. P. More is now, and his grantors have been since 1843, the owners thereof in fee by virtue of a grant made April 28, 1840, by Alvarado, then governor of the Department of California under the Mexican government; that the grant was approved by the Departmental Assembly on the 26th of May, 1840; and that thereafter, on the 1st of April.

1843, Micheltorena, then governor of the Department, ratified and confirmed the grant; and that, on the 17th and 18th of November, 1847, the grant was duly surveyed, and the grantee placed in possession by the First Alcalde of the district in presence of the neighboring proprietors, who consented to the lines thus established.

The answer further alleges that the grant was adjudged to be valid and confirmed under the act of Congress of March 3, 1851, " to ascertain and settle the private land claims in the State of California," 9 Stat. 631, c. 41, and that the defendant A. P. More, on the 4th of March, 1858, succeeded by proper conveyances to all the interests of the grantee in the premises, and still remains the owner thereof, except as to a portion not in dispute here, which he has alienated, and as to portions which are described as belonging to the other defendants, all of whom assert title to the parcels held by them under conveyances from him.

A replication being filed, proofs were taken, from which it appears that the plaintiffs claimed under a patent of the United States, issued to one Manuel Antonio Rodrigues de Poli, bearing date on the 24th of August, 1874. It is conceded that whatever title was acquired by Poli under the patent had passed by proper mesne conveyances to them. The patent recites the proceedings taken by Poli before the Land Commissioners under the act of March 3, 1851; the filing of his petition in March, 1852, asking for the confirmation of his title to a tract of land known as the mission of San Buenaventura, his claim being founded upon a sale made on the 8th of June, 1846, by the then governor of the Department of California; the decree of confirmation rendered by the Board of Commissioners in May, 1855; the affirmation of said decree by the District Court of the United States for the Southern District of California in April, 1861, to the extent of eleven square leagues, and by the Supreme Court of the United States, as shown by its mandate issued in December, 1868; and the subsequent depositing in the General Land Office of a plat of the survey of the claim confirmed, authenticated by the signature of the Surveyor General of the United

States for California, the descriptive notes and plat of the survey being set forth in full.

The land of which the plaintiffs claim to be the owners is embraced in this patent, and upon its efficacy in transferring the title they rely.

The defendants, as stated in their answer, claim under a grant made by Governor Alvarado to Manuel Jimeno on the 28th of April, 1840, which was confirmed under the act of Congress of March 3, 1851, to ascertain and settle private land claims in California. It appeared in evidence, a fact not averred in the answer, that the claim thus confirmed was subsequently surveyed as required by that act, and on the 22d of April, 1872, a patent of the United States therefor was issued to the claimants, Davidson and others, who had acquired by proper conveyances whatever rights Manuel Jimeno possessed under the grant. The defendants afterwards succeeded to the rights and title of these claimants.

The patent to Davidson and others recites the various proceedings taken by them for the confirmation of the claim to the land covered by the grant to Manuel Jimeno, issued by Governor Alvarado on the 28th of April, 1840, and approved in a subsequent instrument by Governor Micheltorena on the 1st of April, 1843, which two instruments are described as separate grants; the confirmation of the claim by the Board of Land Commissioners on the 22d of May, 1855, and that, an appeal having been taken to the District Court of the United States for the Southern District of California, the Attorney General of the United States gave notice that it was not the intention of the United States to prosecute it, and thereupon, at its December Term, 1857, it was dismissed by the court.

The patent also recites the subsequent proceedings taken for the location and survey of the claim, by which it appears that two surveys were made, both of which were brought before the District Court of the United States under the act of 1860; and that the one made under instructions of the United States Surveyor General in December, 1860, and approved by him in February, 1861, was adopted by the court "as the correct and true location of the lands confirmed." The descrip-

tive notes of the survey approved are set forth in full in the patent with a plat of the lands.

This patent does not embrace the premises to which adverse claims are asserted by the defendants. Their contention is that the grant followed by the judicial possession given by the alcalde of the vicinity in 1847, vested in the grantee a perfect title to the lands within such judicial possession, which does embrace these lands; and that their right to such lands is not lost by reason of the fact that they are not included in the subsequent survey of the claim under the act of 1851, and the patent of the United States. The court below held against their contention, and adjudged that the plaintiffs were owners in fee of the described premises, and that the adverse claims of the defendants to an estate or interest therein were unfounded in law or equity, and gave a decree, as prayed, for the plaintiffs. From this decree the defendants have appealed to this court.

*Mr. George Flournoy* and *Mr. John B. Mhoon* for appellants.

I. If the court be of opinion that the patent to De Poli is admissible in evidence we still claim that it did not vest title in the patentee, either as against (1) claimants under a complete Mexican title, or (2) the United States. If Mexico had invested Jimeno with a complete title she had no title to cede to the United States in 1848, and did, in fact, only cede, as to this parcel of land, territorial sovereignty. The United States could not convey by its patent, or otherwise, that which she never had. And if the sale to Jose Arnaz was void, the patent issued thereon is clearly void. The United States can only patent its domain and convey its territory pursuant to law. Any acts of even the highest officers of the United States, contrary to law, will not estop the government from denying that act. Story on Agency, § 307 *a* ; *Hunter* v. *United States*, 5 Pet. 173, 188.

II. The appellants' title to the land described in the answer was complete and perfect in all respects prior to the cession

of California to the United States; and the United States cannot, either by an act of Congress, or patent of the Executive, or decree of the Judicial Department, in contravention of that treaty, divest the appellants.

[Counsel then stated the various steps in their chain of title upon which they relied, and continued:]

We submit, without fear of contradiction, that in no case in California, Florida, Louisiana or Texas has any Mexican or Spanish grantee shown a more perfect and complete title than the grantee in the case at bar. And we confidently claim that unless the fact that the juridical survey being made after July 6, 1846, vitiates said survey, Jimeno's title to the land described in that survey was in all respects perfect and complete. *Minturn* v. *Brower*, 24 California, 644; *Schmitt* v. *Giovanari*, 43 California, 617; *Malarin* v. *United States*, 1 Wall. 282; *United States* v. *Castro*, 5 Sawyer, 625; Rancho Corte de Madera del Presidio; Copp's Pub. Land Laws, p. 532.

That Pablo de la Guerra had jurisdiction to make the survey cannot be doubted. *Cohas* v. *Raisin*, 3 California, 443; *White* v. *Moses*, 21 California, 34; *Merryman* v. *Bourne*, 9 Wall. 592, 602; *Palmer* v. *Low*, 2 Sawyer, 248; *Pico* v. *United States*, 1 Hoffman Land Cas. 279.

"The laws of a conquered or ceded country remain in force till altered by the new sovereign." *Mitchell* v. *United States*, 9 Pet. 711, 749.

Now, if we have shown a perfect title from Mexico in Jimeno prior to the treaty of cession, the United States must protect it. The treaty of cession stipulated for such protection, and as to perfect titles so acquired, they could not be lawfully required to be presented for adjudication under the act of 1851. *Beard* v. *Federy*, 3 Wall. 478, 490. The treaty was the law of the title.

There can be no estoppel by the patent to Davidson as in favor of respondents, for the reason that there could be none against them arising out of a proceeding to which neither they nor their grantor was a party.

Neither the United States patent to De Poli nor the United States patent to Davidson can affect the rights of the other

party in a suit for said claims under Mexican grants, because a United States patent on a Mexican grant is a quit claim deed from the government, and does not 'enlarge or abridge pre-existing titles. *United States* v. *Arredondo*, 6 Pet. 691, 736; *New Orleans* v. *De Armas*, 9 Pet. 224; *Langdeau* v. *Hanes*, 21 Wall. 521; *Nelson* v. *Moon*, 3 McLean, 319.

The appellants are not estopped by a quit claim deed under which they do not claim. *Kidder* v. *Blaisdell*, 45 Maine, 461.

Under the rule in *Cassidy* v. *Carr*, 48 California, 339, and *Boyles* v. *Hinds*, 2 Sawyer, if these respondents derived their title by grant from the United States, as, for instance, under the preëmption or other valid act by which the United States disposes of *its* lands, then the patent to Davidson would estop these appellants for the sole reason that appellants would have litigated their rights in a proceeding to which respondents' grantor was a party, and the decree in that case would be an estoppel on both parties to this suit. The case at bar presents no such facts. The United States is not respondents' grantor, nor is it appellants' grantor. It never had the title to the land described in either patent. If so, both patents are void, for under the act of 1851 the United States could issue patents only on lands the right to which came from Mexico to claimants.

The land in dispute is embraced in the De Poli patent; that patent issued in a proceeding to which appellants (and their grantors) were not parties. By that patent the United States declared that it had no title or rights to the land therein de-scribed and that, as against the United States, De Poli had derived title from Mexico.

By its patent to Davidson the United States did not under-take to do more than segregate Davidson's land from the *public domain*. It had no power to establish lines which would determine the rights of private parties *inter sese*, be-cause those private parties were not parties in the proceedings under which such patents issued. The land in dispute here never was public domain. It either belonged to De Poli or Jimeno at the time of the cession to the United States, and nothing the United States has since done, or can now do,

should estop those who have succeeded to De Poli or Jimeno from showing to whom it did then belong. "In such a case the United States has no interest." *United States* v. *White*, 23 How. 249.

As was said in *Bissell* v. *Henshaw*, 1 Sawyer, 553, 583: As if aware of the confusion which must follow such proceedings, the act of 1851 provides expressly that neither the final decree of the Board of Commissioners, or of the District, or the Supreme Court, or. any patent to be issued under that act, shall be conclusive against any one but the claimants and the United States. . . .. *Rodrigues* v. *United States*, 1 Wall. 582, 588."

If there were a contest between the United States and either of these patentees, or a grantee of the United States and either of the patentees, the patent would clearly be conclusive. But how can such a rule apply when both parties claim the land under a. title paramount to the United States?

The land in question does not belong to the United States. It is the property of either appellants or respondents. The title came from Mexico to its present owners — not from the United States. The determination of the suit will depend upon the question : To whom did Mexico convey ? If Mexico conveyed the property to appellants, the United States cannot convey it to respondents; and, on the other hand, if she conveyed it to respondents, the United States cannot convey it to appellants. The United States has, by its Executive Department, segregated it from the public domain, and it now remains for the Judicial Department of the government, as the last duty of the government under the treaty, to determine to whom Mexico did convey, and to then protect the Mexican grantee in his property.

III. But if the Pico sale, upon which the De Poli patent issued, is valid, and the juridical survey of November, 1847, is void, the respondents are estopped from now objecting to the lines then established and agreed upon by Anguisola, in charge of the Mission.

The recital in the juridical survey, that the neighboring owners. were present and consented to that survey and the

lines then established, and that Anguisola was then in charge of the Mission lands, and was present and satisfied with said lines, is presumptively true. California Code of Civil. Procedure, § 1963, Subd. 15; *Stinson* v. *Hawkins*, 13 Fed. Rep. 833.

Respondents are estopped by their assent from denying the division line between themselves and defendants. *Stowe* v. *United States*, 19 Wall. 13.

The line established by agreement controls as between the parties or their privies: *Bronson's Executor* v. *Chappell*, 12 Wall. 681; *Spring* v. *Hewston*, 52 California, 442; *Carpentier* v. *Thurston*, 24 California, 281; *Alviso* v. *United States*, 8. Wall. 337; *Higueras* v. *United States*, 5 Wall. 824; *Fossatt's Case*, 2 Wall. 649, 715. "Acquiescence in error takes away the right of objecting to it." California Civil Code, § 3516.

*Mr. E. S. Pillsbury* for appellees.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The question presented for determination in this case relates to the effect of proceedings taken under the act of March 3, 1851, to ascertain and settle private land claims in California, upon the claims of parties holding concessions of lands in that State under the Spanish or the Mexican government. By the cession of California to the United States, the rights of the inhabitants to their property were not affected. They remained as before. Political jurisdiction and sovereignty over the territory and public property alone passed to the United States. *United States* v. *Percheman*, 7 Pet. 51, 87. Previous. to the cession numerous grants of land in California had been made by the Spanish and Mexican governments to private parties. Some of these were of tracts with defined boundaries; some were for specific quantities of land to be selected from areas containing a much larger quantity; and others were of lands known only by particular names, without any designated boundaries. To ascertain what rights had thus passed, and to

carry out the obligation which the government of the United States had assumed to protect all rights of property of those who remained citizens of the country, Congress passed the act of March 3, 1851. By it a board of commissioners was created, to which all persons claiming land by virtue of any right or title derived from the Mexican or Spanish governments could present their claims and have them examined and their validity determined; and the claimants could appear by counsel and produce documentary evidence and witnesses in support of their claims. The act required all persons thus claiming lands in California to present their claims to the board within two years from its date, and declared in substance, that if, upon examination, they were found by the board, and by the courts of the United States to which an appeal was allowed, to be valid, the claims should be confirmed and surveyed, and patents issued therefor to the claimants. But the act also declared that all lands the claims to which were not presented to the board within that period, should be considered as part of the public domain of the United States. In *Beard* v. *Federy*, 3 Wall. 478, 490, this court, whilst stating that it was unnecessary to express any opinion as to the validity of the legislation in respect to perfect titles acquired under the former government, held that it was not subject to any constitutional objection, so far as it applied to grants of an imperfect character, which required further action of the political department to render them perfect. The grant to Manuel Jimeno, under which the defendants claim, was one of an imperfect character. Upon the cession of the country there remained a further proceeding to be had with respect to that grant before an indefeasible title could vest in the grantee. A formal transfer of the property to the grantee by officers of the government was necessary. The proceeding was termed a judicial delivery of possession. Until it was had the grant was an imperfect one. As preliminary to, or as a part of the official delivery, the boundaries of the land were to be established, after summoning the neighboring proprietors as witnesses to the proceeding. *Malarin* v. *United States*, 1 Wall. 282, 289. No such official delivery of possession was had under the former government

to the grantee, Jimeno, though the grant to him contains these conditions: " He shall petition the proper judge to be put in judicial possession by him in virtue of this document, by whom the boundaries shall be marked out, on the limits of which he shall place the proper land marks. The land now granted is of the extent of four square leagues, more or less, as shown by the map which accompanies the espediente. The judge who shall give him possession shall have it measured in conformity with the evidence, the surplus that results remaining in the nation for its proper use."

The authority and jurisdiction of Mexican officials terminated on the 7th of July, 1846. On that day the forces of the United States took possession of Monterey, the capital of California, and soon afterwards occupied the principal portions of the country, and the military occupation continued until after the treaty of peace. The political department of the government designated that day as the period when the conquest of California was complete and the authority of the officials of Mexico ceased. In this matter the judiciary follows the political department. *United States* v. *Yorba*, 1 Wall. 412, 423 ; *United States* v. *Pico*, 23 How. 321, 326 ; *Hornsby* v. *United States*, 10 Wall. 224, 239. After that date no alcaldes elected by the citizens had any jurisdiction to deliver judicial possession. This was distinctly held in the case of *Fremont* v. *United States*, 17 How. 542, 563. In answer to the objection there taken that there was no survey or judicial possession of the land granted to Alvarado, under whom Fremont claimed, the court said: " The alcalde had no right to survey the land or deliver judicial possession, except by the permission of the American authorities. He could do nothing that would in any degree affect the rights of the United States to the public property ; and the United States could not justly claim the forfeiture of the land for a breach of these conditions, without showing that there were officers in California, under the military government, who were authorized by a law of Congress to make this survey, and deliver judicial possession to the grantee. It is certain that no such authority existed after the overthrow of the Mexican government."

The doctrine invoked by the defendants, that the laws of a conquered or ceded country, except so far as they may affect the political institutions of the new sovereign, remain in force after the conquest or cession until changed by him, does not aid their defence. That doctrine has no application to laws authorizing the alienation of any portions of the public domain, or to officers charged under the former government with that power. No proceedings affecting the rights of the new sovereign over public property can be taken except in pursuance of his authority on the subject. The cases in the Supreme Court of California and in this court which recognize as valid grants of lots in the Pueblo or City of San Francisco by alcaldes appointed or elected after the occupation of the country by the forces of the United States, do not militate against this view. Those officers were agents of the pueblo or city, and acted under its authority in the distribution of its municipal lands. They did not assume to alienate or affect the title to lands which was in the United States. *Welch* v. *Sullivan*, 8 California, 165; *White* v. *Moses*, 21 California, 34; *Merryman* v. *Bourne*, 9 Wall. 592.

It follows from what is thus said that it would be a sufficient answer to the contention of the defendants, that the grant under which they claim to have acquired a perfect title conferred none. The grantees were not invested with such title, and could not be, without an official delivery of possession under the Mexican government, and such delivery was not had, and could not be had, after the cession of the country, except by American authorities acting under a law of Congress. But independently of this consideration, and assuming that the title under the grant was perfect, the obligation of the grantee was none the less to present his claim to the Board of Land Commissioners for examination. The ascertainment of existing claims was a matter of vital importance to the government in the execution of its policy respecting the public lands; and Congress might well declare that a failure to present a claim should be deemed an abandonment of it, and that the lands covered by it should be considered a part of the public domain. Certain it is that a claimant presenting his

claim to the Board for examination and confirmation, in order that he might subsequently acquire a patent from the government, is bound by the adjudication of the Board. After submitting his claim to its examination and judgment, he cannot afterwards be heard to say that in adjudicating upon his title the Board erred, or that the Land Department in determining the boundaries of his claim erred, in order that he may claim outside of the survey and patent other lands which he considers covered by his grant. He cannot repudiate a jurisdiction to which he has appealed; and the estoppel extends to parties claiming under him. *Boyle* v. *Hinds*, 2 Sawyer, 527; *Cassidy* v. *Carr*, 48 California, 339.

In determining claims under Mexican grants the Board of Land Commissioners was required by the act under which it was created, to be governed by the treaty of Guadalupe Hidalgo, the law of nations, the laws, usages and customs of the government from which the claim was derived, the principles of equity, and the decisions of the Supreme Court of the United States, so far as they were applicable. And in *United States* v. *Fossatt*, 21 How. 445, 448, 449, this court, in considering what was involved in the inquiry into the validity of a claim to land under that act, said : " It is obvious that the answer to this question must depend, in a great measure, upon the state and condition of the evidence. It may present questions of the genuineness and authenticity of the title, and whether the evidence is forged or fraudulent; or, it may involve an inquiry into the authority of the officer to make a grant, or whether he was in the exercise of the faculties of his office when it was made; or, it may disclose questions of the capacity of the grantee to take, or whether the claim has been abandoned or is a subsisting title, or has been forfeited for a breach of conditions. Questions of each kind here mentioned have been considered by the court in cases arising under this law. But, in addition to these questions upon the vitality of the title, there may arise questions of extent, quantity, location, boundary, and legal operation, that are equally essential in determining the validity of the claim. In affirming a claim to land under a Spanish or

Mexican grant, to be valid within the law of nations, the stipulations of the treaty of Guadalupe Hidalgo, and the usages of those governments, we imply something more than that certain papers are genuine, legal and translative of property. We affirm that the ownership and possession of land of definite boundaries rightfully attach to the grantee."

Trust relations respecting the property between the patentee and others may be enforced equally with such relations between him and others respecting any other property, but until the patent is set aside or modified by proceedings taken at the instance of the government, all the questions necessarily involved in the determination of a claim to land under a Spanish or Mexican grant, and in establishing its boundaries, are concluded by it in all courts and proceedings, except as against parties claiming by superior title, such as would enable them to resist successfully any action of the government in disposing of the property. The confirmation takes effect, by relation, as of the date of the first proceeding commenced before the Land Commissioners; and an adjudication that at that date it was valid is also an adjudication that it was valid at the date it was made. And the patent which follows the confirmation and approved survey and is a matter of record, is itself evidence of the regularity of preliminary proceedings. As was said in *Beard* v. *Federy*, 3 Wall. 478, 492, " by it the government declares that the claim asserted was valid under the laws of Mexico; that it was entitled to recognition and protection by the stipulations of the treaty, and might have been located under the former government, and is correctly located now, so as to embrace the premises as they are surveyed and described. As against the government this record, so long as it remains unvacated, is conclusive. And it is equally conclusive against parties claiming under the government by title subsequent. It is in this effect of the patent as a record of the government that its security and protection chiefly lie."

It remains to consider two other positions taken by the appellants; first, that the sale to Poli of the ex-mission of San Buenaventura was illegal and void, and hence that no

title passed to the patentee on its confirmation; second, the want of any allegation in the complaint, or any evidence in the proofs, that the plaintiffs were in possession of the premises when this suit was commenced. In support of the first position the appellants cite *United States* v. *Workman*, 1 Wall. 745. In that case it was held that the Departmental Assembly of California had no power to authorize the governor to alienate any public lands of the department, and that its own power was restricted to that conferred by the laws of colonization, which was simply to approve or disapprove of the grants made by the governor under those laws. But it does not follow that there were not exceptional circumstances with reference to the sale to Poli, which authorized the governor to make it. We are bound to suppose that such was the case, in the absence of any evidence to the contrary, from the fact that the validity of his claim under it was confirmed by the Board of Land Commissioners, by the District Court of the United States, and by this court on appeal. The question of its validity was thereby forever closed, except as against those who might be able to show a prior and better title to the premises. The defendants show no title whatever; but, on the contrary, the grant under which they assert title has been, by the adjudication of the Board of Land Commissioners and by the survey and patent, confined to other land. Second, as to the want of any allegation in the complaint of possession by the plaintiffs, or any evidence of that fact in the proofs, it is sufficient to say that, by § 738 of the Code of Civil Procedure of California, a plaintiff asserting title to lands, though out of possession, may maintain an action to determine an adverse claim, estate, or interest in the premises. *People* v. *Center*, 66 California, 551. A statute of Nebraska, authorizing a similar suit by a plaintiff out of possession, was before this court for consideration in *Holland* v. *Challen*, 110 U. S. 15, and the jurisdiction of a court of equity to grant the relief prayed in such case was sustained. See, also, *Reynolds* v. *Crawfordsville Bank*, 112 U. S. 405, 411; *Chapman* v. *Brewer*, 114 U. S. 158, 170, 171; *United States* v. *Wilson*,

118 U. S. 86, 89; *Frost* v. *Spitley*, 121 U. S. 552, 557. We see no error in the decree of the court below, and it is accordingly

*Affirmed.*