### DEAN v. CITY OF SAN DIEGO.

(District Court, S. D. California, S. D.  August 12, 1921.)

#### No. E-61.

1. **Public lands ⏀224½, New, vol. 11A Key-No. Series—Pueblo lands passing to successor city determined by patent.**

   A city of California has no title to any lands as successor to a Mexican pueblo except such as were included in its claim presented to and confirmed by the Board of Land Commissioners appointed under Act March 3, 1851, nor outside the boundaries described in the patent issued pursuant to said act.

2. **Navigable waters ⏀37(8)—After-acquired rights to land under water not inuring to grantee.**

   St. Cal. 1911, p. 1357, granting to the city of San Diego the right to make certain uses of lands under the waters of San Diego Bay, but expressly prohibiting any conveyance or transfer of the same, did not inure to the benefit of a prior grantee of the city of lands in the bay to which it had no title, and such conveyance being wholly ineffective and void may be so adjudged irrespective of the rights of the city under the act.

In Equity. Suit by Charles E. Dean against the City of San Diego. Decree for defendant.

E. H. Gruel and Frank G. Tyrrell, both of Los Angeles, Cal., for plaintiff.

⏀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

S. J. Higgins, City Atty., and Arthur F. H. Wright and C. G. Selleck, Deputy City Atty., all of San Diego, Cal., for defendant.

BLEDSOE, District Judge. For an expressed consideration of $10, the city of San Diego, through appropriate officers, on the 12th day of September, 1871, "granted, bargained and sold, released and quitclaimed," to plaintiff herein, " * * * all the right, title, interest, estate and claim whatsoever of the said city of San Diego, of, in and to" two certain pieces of property designated therein as "submerged and overflowed lands" and which the proofs show to be situated beneath the waters of the Bay of San Diego and below the line of ordinary high tide. A part of the property, as I understand the situation, is now occupied by, and is a part of, the United States Marine Base. Plaintiff's deed was never placed of record until the fourth day of March, 1916. He, being a citizen of Louisiana, now seeks in this suit to quiet the title to said parcels of land as against the city of San Diego, alleging the lands to be of the value of $100,000. The lands have never been assessed for taxation.

The controlling theory of plaintiff's case seems to be based upon the proposition, adverted to by him for the first time in his reply brief, to the effect that the predecessor of the city of San Diego, the pueblo of San Diego, became the owner and possessed of the property in question, under and pursuant to the terms and provisions of Mexican law, at a time anterior to the acquisition by the United States of America of the territory now forming the state of California.

Plaintiff's claim is stated thus in his reply brief:

"As early as 1845, a survey and map was made by Henry D. Fitch, under the authority of the Mexican government. This survey and map were regularly approved by Don Pio Pico, then Governor of California, and countersigned by the secretary, Don Matias Moreno. Under the laws of Spain and Mexico, this assignment was known as a juridical possession, and no further action on the part of the government was necessary to vest title thus assigned in the pueblo authorities for the use and benefit of the inhabitants of the pueblo.

" * * * It will be conceded that the surveying department of the United States government has defined the boundaries of the pueblo lands of San Diego, following the same exterior lines as fixed by the Mexican government in 1845, by Henry D. Fitch, except the water line. Instead of running from Point Loma to Los Chollas, in an easterly direction, as done by Fitch, the American surveyor, Hays, followed the meanderings of the bay at ordinary high tide."

I discover no proofs in the case which justify the contention thus stated, particularly no proofs of an investiture by the Mexican government of the pueblo of San Diego with "juridical possession." Graham v. U. S., 4 Wall. 259, 18 L. Ed. 334. Assuming, however, that the facts are as stated in the reply brief just quoted, I am firmly of the conclusion that, under the repeated rulings of the courts of the United States and of the state of California, plaintiff's claim to the land, in virtue of the deed relied upon, is without merit.

It is the fact, abundantly shown by the evidence, that the land purporting to have been conveyed to plaintiff as above stated lay under the navigable waters of the Bay of San Diego, below the line of ordinary high tide. Under and pursuant to and in conformity with the act of

Congress of the United States of March 3, 1851 (9 Stat. 631), the government of the United States, by its patent, granted certain lands to the city of San Diego. This patent recites, among other things, that on the 14th day of February, 1853, "the president and the trustees of the city of San Diego, as claimants, filed their petition" with the Board of Land Commissioners, provided for in said act, for the confirmation of title to the pueblo lands of San Diego in the state of California; that pursuant to such petition the said Board, on the 22d day of January, 1858, rendered its decree of confirmation in favor of the claimants, holding the claim made by the claimants valid and decreeing the confirmation of the same. The patent further recites that—

"The land of which confirmation is made is situated in the county of San Diego and is known as the pueblo or town lands of San Diego."

The patent shows that in due course the decree of the Board of Commissioners became final and that thereupon, pursuant to the said statute and the decree of said Board, it became the duty of the United States Surveyor General to survey the said lands so claimed and confirmed, which was done, and upon such survey so made and pursuant to the terms, descriptions, courses, and distances thereof, the patent of the United States to the city of San Diego, as above referred to, was issued and delivered. That patent shows, upon the face of the map attached thereto, and pursuant to the courses and distances of the detailed description, that the lands lying within the limits of the Bay of San Diego, lands below ordinary high tide, were not included in the grant. By a reference to the courses and distances specified, this is put beyond cavil in that the first station of the patent is located "in mound of earth on the shore of the Bay of San Diego" (U. S. v. Pachecom, 2 Wall. 587, 590 [17 L. Ed. 865]), the boundary line "thence meandering along the shore of the Bay of San Diego at the line of ordinary high water," etc.

[1] The settlement and determination of land claims in California arising out of Spanish or Mexican grants has been a fruitful source of litigation both in the state and federal courts. The reports of the courts of last resort in both jurisdictions are filled with adjudications concerning these claims and having to do particularly with a consideration and construction of the Act of March 3, 1851, referred to. By emphatic and reiterated declaration, it has been determined beyond all possibility of successful contradiction that whatever claim to lands a Spanish or Mexican pueblo may have had under the Spanish or Mexican law, whether the same had ripened into a perfected title or not, or whether juridical possession had been conferred or not, or whether the claim was merely an inchoate and equitable one or not, it was the duty of such pueblo, and those representing it, to file and present its application for confirmation of its claim of lands, secured under such Spanish or Mexican law or authority, to the Board of Land Commissioners, under and pursuant to the terms and requirements of the Act of 1851, and within the period permitted therein. And it has likewise been determined, in the same conclusive manner, that as to any lands

claimed or sought to be claimed by any such pueblo, pursuant to Spanish or Mexican law or authority, with respect to which no application for confirmation was actually entered or presented to said Board of Land Commissioners by such city or pueblo, in conformity with the requirements of said act, the same devolved upon and became the property of the government of the United States of America. Likewise, it has been held and declared that, irrespective of the nature of the claim, or application for confirmation, actually made by such pueblo, the determination of the Board of Land Commissioners provided for in the act, subject to and controlled by the appeal to the courts provided for therein, conclusively determined and fixed the nature, extent, and boundaries of the property actually belonging to such pueblo, in virtue of such Spanish or Mexican law or authority, and thereby determined the amount which said pueblo or one holding title under it, was thereafter entitled to claim, as against the United States or those holding title under it. U. S. v. Fossat, 20 How. 413, 15 L. Ed. 944; More v. Steinbach, 127 U. S. 70, 78, 8 Sup. Ct. 1067, 32 L. Ed. 51; Beard v. Federy, 3 Wall. 478, 18 L. Ed. 88; Townsend v. Greeley, 5 Wall. 326, 335, 18 L. Ed. 547; Grisar v. McDowell, 6 Wall. 363, 374, 18 L. Ed. 863; U. S. v. Halleck, 1 Wall. 439, 456, 17 L. Ed. 664; Botiller v. Dominquez, 130 U. S. 238, 255, 9 Sup. Ct. 525, 32 L. Ed. 926; F. A. Hihn Co. v. City of Santa Cruz, 170 Cal. 436, 150 Pac. 62; Ainsa v. New Mexico & Arizona R. R. Co., 175 U. S. 76, 84, 20 Sup. Ct. 28, 44 L. Ed. 78; De Guyer v. Banning, 167 U. S. 723, 740, 17 Sup. Ct. 937, 42 L. Ed. 340; Chipley v. Farris, 45 Cal. 527, 538.

Under the facts presented here, pursuant to the authorities cited, the patent issued by the government is determinative and conclusive upon the city and all those claiming under it as to the property actually owned by or vested in the pueblo or its successor, the city of San Diego. It follows, therefore, that the city of San Diego never acquired title to the land it purported to deed to the plaintiff herein, and follows with equal truth therefrom that the plaintiff never acquired from the city, at the time of the conveyance, any title to such property.

[2] Reliance, however, is also made upon the fact that, in consequence of the provisions of section 1106 of the Civil Code of California, a title to the lands in question, alleged to have been conveyed to the city of San Diego subsequent to the execution and delivery of plaintiff's deed, inured to the benefit of the plaintiff and entitles him to a decree as prayed for.

Assuming the applicability of such section, nevertheless it suffices to say that no title was ever acquired by the city of San Diego which could feed the title sought to be conferred upon plaintiff in virtue of the deed of September 12, 1871. By repeated declarations of our Supreme Court, with respect to lands acquired by the United States and out of which sovereign states of the Union were thereafter created and set up, it has been definitely decided that lands lying beneath the navigable waters of the sea or any of its arms became the property of such sovereign state adjacent thereto, subject only to the rights surrendered to the general government through the federal

Constitution. Pollard v. Hagen, 3 How. 212, 11 L. Ed. 565; Weber v. Board Harbor Commissioners, 18 Wall. 57, 65, 21 L. Ed. 798; City & County San Francisco v. Le Roy, 138 U. S. 656, 670, 11 Sup. Ct. 364, 34 L. Ed. 1096. In that wise, the state of California became possessed of lands below ordinary high tide in San Diego Bay. The only claim to the property in question possessed by the city at all is in virtue of the passage of an act of the Legislature of the State of California in 1911 (Stats. 1911, p. 1357). That act purports to confer upon the city of San Diego the right to make certain uses of the lands of San Diego Bay beneath the navigable waters thereof, and including the lands in suit herein. Such act, however, expressly prohibits the city of San Diego from making any "grant, conveyance or transfer of any character" of the lands described therein and referred to herein. No right or title acquired by the city from the state, the proprietor of the lands in question, authorized the city to make any sort of conveyance to this plaintiff, and the conveyance actually made served to confer no title upon him. In this wise, the conveyance being void at law, its invalidity and complete inability to confer any rights upon the plaintiff may be determined and decreed herein, irrespective of any rights that may or may not attach to said lands on the part of the city, defendant herein. Knight v. United Land Ass'n, 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974; St. Louis Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875; Klauber v. Higgins, 117 Cal. 451, 49 Pac. 466; Williams v. City of San Pedro, 153 Cal. 44, 94 Pac. 234.

The usual decree of dismissal will be entered.