# THOMPSON *v.* LOS ANGELES FARMING AND MILLING COMPANY.

**ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.**

No. 87. Argued and submitted November 8, 1900.—Decided January 7, 1901.

The papers offered in evidence in this case, instead of showing the non-exist-ence of special circumstances with reference to the sale to de Celis which authorized the governor to make it, affirm the existence of those circumstances, and the condition of the plaintiff in error is reduced to this dilemma: — the papers being ruled out, the validity of the grant will be implied: — the papers being ruled in, the validity of the grant will be shown.

THE case is stated in the opinion of the court.

*Mr. Harvey M. Friend* for plaintiffs in error.

*Mr. Stephen M. White* and *Mr. James H. Shankland* for defendant in error submitted on their brief.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This is an action of ejectment in which defendant in error was plaintiff in the court below, and the plaintiffs in error were defendants. It was brought in the Superior Court of Los Angeles County, State of California. Besides a prayer for the recovery of the land in controversy an injunction was asked against the commission or repetition of certain described trespasses. The land sued for was the south half of the Rancho ex-Mission de San Fernando, with certain exceptions. The defendant in error relied for title upon a patent of the United States to Eulogio de Celis, dated January 8, 1875, which recited that it was based upon the confirmation of his title as one derived from the Mexican government through a deed of grant made the 17th day of June, 1846, by Pio Pico, the then constitutional governor of the department of the Californias. The grantor of defendant in error purchased an undivided half of

the rancho in 1869, and became the owner in severalty of the tract sued for by partition proceedings.

One of the defences of the action, and the only one we are concerned with on this writ of error, was the invalidity of the patent based on the invalidity of the grant from the Mexican government, and its confirmation by the Board of Land Commissioners.

The answer sets out the proceedings before the board, its decision and decree, and the deed of Pio Pico. As much of the deed as is necessary to quote is as follows:

"The undersigned, constitutional governor of the department of the Californias, in virtue of the powers vested unto him by the supreme government of the nation, and in virtue of a decree of the honorable departmental assembly of April third of the present year, to raise means for the purpose of maintaining the integrity of the territory of this department, for the sum of fourteen thousand dollars, which he receives, sells unto Don Eulogio de Celis and his heirs, ex-Mission of San Fernando with all its properties, estates, lands and movables, with the exception of the church and all its appurtenances, which remains for public use. Said purchaser obligating himself to maintain on their lands the old Indians on the premises during their lifetime, with the right to make their crops, with the only condition that they shall not have the right to sell the lands they cultivate and any other which they possess without anterior title from the departmental government, for all of which the aforesaid Senor Celis shall be acknowledged as the legitimate owner of the aforesaid ex-Mission of San Fernando, to use the same as to him shall seem best, guaranteeing unto him, as this government does guarantee, that he is well possessed of the aforesaid estate with all the prerogatives granted by law to purchasers, with the only condition that the above mentioned purchaser shall not take possession within the space of eight months from the date hereof, within which delay the government shall have the right to annul this contract by reimbursing to the aforesaid Senor Celis the sum of fourteen thousand dollars with interest at the current commercial rates; but if this reimbursement is not operated within the aforesaid eight months, this sale shall be valid."

The petition to the board was as follows:

" Before the commissioners to ascertain and settle private land claims in the State of California.

" Eulogio de Celis gives notice that he claims a tract of land situated in the present county of Los Angeles, known by the name of Mission of San Fernando, bounded as follows: On the north by the rancho of San Francisco, on the west by the mountains of Santa Susanna, on the east by the rancho of Miguel Triumfo, and on the south by the mountains of Portesuelo, which tract is supposed to contain fourteen square leagues.

" Said land was sold to said Celis by a deed of grant dated the seventeenth day of June of the year eighteen hundred and forty-six, by Pio Pico, constitutional governor of the Californias, thereto duly authorized by the supreme government of the nation and by a decree of the departmental assembly of April third, eighteen hundred and forty-six; said sale was made for the sum of fourteen thousand dollars, which was paid by the said Celis to the said Pio Pico, who acknowledged the receipt thereof, as will more fully appear by reference to the aforesaid deed of grant, copy whereof marked A is hereto annexed.

" Claimant avers that the aforesaid deed of sale contains the condition that the government of Mexico shall have the right to annul the contract by reimbursing to this claimant the aforesaid sum of fourteen thousand dollars, with the current rates of interest, and in case said sum is not reimbursed within said eight months, said Mission of San Fernando shall be his in full property. And this claimant avers that said sum of fourteen thousand dollars was never reimbursed to him by the Mexican government, or by any person whatsoever.

" Said Mission of San Fernando was leased by the government of Mexico to Andres Pico in December, 1845, for the term of ——— years, which lessee has been in the occupancy of the said property up to the present date.

" Claimant further avers that he knows of no other claim to the aforesaid mission, and he relies on the documents above referred to and witnesses he shall produce to substantiate his claim."

The material part of the decision was as follows:

" The grant purports to have been made in consideration of the payment of the sum of fourteen thousand dollars in money. Pio Pico testifies that he executed the grant at the date that the same bears, and that it was made under special instructions of his government for the purpose of raising the necessary funds to enable the department to prepare for a defence against the attack of the Americans, and that the sum of fourteen thousand dollars was actually received by him from the grantee in consideration thereof, and that the funds were used by him for the benefit of the nation in the defence of the same. The genuineness of the grant is clearly established and the circumstances under which it was made so clearly explained as to leave no doubt but it was done in good faith."

A decree was entered confirming the grant.

The title based on the proceedings before the commissioners is alleged in the several answers to be invalid for the following reasons:

" I. Because, as appears on its face, it was a deed of sale whereby said Pio Pico, governor of California, attempted, for the consideration of $14,000, to grant the land, therein mentioned to said Eulogio de Celis, which act was *ultra vires*, unauthorized by and in violation of the laws of the republic of Mexico.

" II. Because the lands so attempted to be granted were lands embraced within and belonging to the Mission of San Fernando, and not legally subject to the granting power of said governor.

" This defendant further says in this behalf that said ' commissioners to ascertain and settle the private land claims in the State of California,' never had any jurisdiction over the subject-matter of said claim of said Eulogio de Celis, otherwise called Eulogio Celis, because he says that it was set out and appeared on the face of the notice and petition of said Eulogio Celis and accompanying documents, to wit, the alleged grant itself, that at the time of the making of said alleged grant the lands embraced therein were mission lands, and also that said so-called grant was in the nature of a sale for money, and that said grant was therefore without authority of law and void, and did not

constitute a claim by virtue of any right or title derived from the Spanish or Mexican government.

" And defendant says that because of the facts so set out and shown in said notice and petition and accompanying documents so filed with said commissioners by said Eulogio de Celis, said commissioners were wholly without jurisdiction to adjudicate upon or to confirm said claim, and that their said decree of confirmation thereof is and always was *ultra vires* and utterly void, and that all subsequent proceedings based thereon, including the survey and patenting of said lands by the United States Government, were and are wholly without authority of law and void."

The defendant in error obtained judgment in the trial court, which was affirmed by the Supreme Court of the State. 117 California, 594. Thereupon the Chief Justice of the State allowed this writ of error.

The error assigned is as to the action of the trial court in excluding testimony which it is claimed tended to support the said defence.

To support the assignment of error it is urged that the governor of the Californias had no authority to make the grant, " and therefore the decree of confirmation was without that authority of law, and was also absolutely void and a mere nullity." And it is hence further contended that the patent based on and reciting the decree was void on its face. The ultimate basis of the contention is that the Court of Private Land Claims had no jurisdiction to confirm the grant because the governor of the Californias had no power to convey the public land for a money consideration. That is to say, the grant being void it could not be the basis of a claim to lands " by virtue of any right or title derived from the Spanish or Mexican government." This conclusion is attempted to be deduced from the words of section 8 of the act of Congress of March 3, 1851, 9 Stat. 631, c. 41, creating the Board of Land Commissioners. The section provided—

" That each and every person claiming lands in California *by virtue of any right or title derived from the Spanish or Mexican government* shall present the same to said commissioners when

sitting as a board, together with such documentary evidence and testimony of witnesses as the said claimant relies upon in support of such claims; and it shall be the duty of the commissioners when the case is ready for hearing to proceed promptly to examine the same upon such evidence and upon the evidence produced in behalf of the United States, and to decide upon the validity of the said claims."

We think that counsel put too limited a signification on the words of section 8, that the claim shall be "by virtue of any right or title derived from the Spanish or Mexican government." The words of course were descriptive of the class of claims of which the Board of Land Commissioners was given jurisdiction. They made a special tribunal of the board limited to hear a particular class of claims, but not limited to the questions of law and fact which could arise in passing on and determining the validity of any claim of the class. The power to consider whatever was necessary to the validity of the claim—propositions of law or propositions of fact—the fact of a grant, or the power to grant, was conferred. If there should be a wrong decision the remedy was not by a collateral attack on the judgment rendered. The statute provided the remedy. It allowed an appeal to the District Court of the United States, and from thence to this court. Legal procedure could not afford any better safeguards against error. Every question which could arise on the title claimed could come to and receive judgment from this court. The scheme of adjudication was made complete and all the purposes of an act to give repose to titles were accomplished. And it was certainly the purpose of the act of 1851 to give repose to titles. It was enacted not only to fulfil our treaty obligations to individuals, but to settle and define what portion of the acquired territory was public domain. It not only permitted but required all claims to be presented to the board, and barred all from future assertion which were not presented within two years after the date of the act. Sec. 13. The jurisdiction of the board was necessarily commensurate with the purposes of its creation, and it was a jurisdiction to decide rightly or wrongly. If wrongly a corrective was afforded, as we have said, by an appeal by the claimant or by the United States to the

District Court. Sec. 9. Indeed, the proceedings in the District Court were really new, and further evidence could be taken. Sec. 10. Upon the confirmation of the claim by the commissioners or by the District or Supreme Court, a patent was to issue and be conclusive against the United States. Sec. 15.

Further general discussion we do not think is necessary. This court has had occasion heretofore to consider the statute and the jurisdiction of the Board of Land Commissioners. *Beard* v. *Federy,* 3 Wall. 478; *More* v. *Steinback,* 127 U. S. 70.

In considering what was involved in the inquiry into the validity of a claim to land under the act, this court said in *More* v. *Steinback,* quoting *United States* v. *Fossatt,* 21 How. 445:

" It is obvious that the answer to this question must depend in a great measure upon the state and condition of the evidence. It may present questions of the genuineness and authenticity of the title, and whether the evidence is forged or fraudulent; or *it may involve an inquiry into the authority of the officer to make a grant, or whether he was in the exercise of the faculties of his office when it was made. . . .*"

The plaintiff in *More* v. *Steinback* depended upon a patent of the United States issued to one Manuel Antonio Rodrigues de Poli, dated August 24, 1864. It recited the proceedings taken before the Land Commissioners under the act of March 3, 1851; the filing of his petition in March, 1852, asking for the confirmation of his title to a tract of land known as the Mission of San Buena Ventura, his claim being founded upon a sale made on the 8th of June, 1846, by the then governor of the department of the Californias; the affirmation of the decree successively by the District Court of the Southern District of California, and by the Supreme Court of the United States, and the survey of the claim confirmed. It was contended that the sale to Poli of the ex-Mission San Buena Ventura was illegal and void, and hence no title passed to the patentee on its confirmation, and in support of the contention, *United States* v. *Workman,* 1 Wall. 745, was cited.

Replying to the contention, the court said by Mr. Justice Field:

" In that case ( *United States* v. *Workman*) it was held that the departmental assembly of California had no power to authorize the governor to alienate any public lands of the department, and that its own power was restricted to that conferred by the laws of colonization, which was simply to approve or disapprove of the grants made by the governor under those laws. But it does not follow that there were not exceptional circumstances with reference to the sale to Poli, which authorized the governor to make it. We are bound to suppose that such was the case, in the absence of any evidence to the contrary, from the fact that the validity of his claim under it was confirmed by the Board of Land Commissioners, by the District Court of the United States, and by this court on appeal. The question of its validity was thereby forever closed, except as against those who might be able to show a prior and better title to the premises."

More fully on the point of the effect of the patent it was said in *Beard* v. *Federy :*

" This instrument is, therefore, record evidence of the action of the government upon the title of the claimant. By it the government declares that the claim asserted was valid under the laws of Mexico ; that it was entitled to recognition and protection by the stipulations of the treaty, and might have been located under the former government, and is correctly located now, so as to embrace the premises as they are surveyed and described. As against the government this record, so long as it remains unvacated, is conclusive. And it is equally conclusive against parties claiming under the government by title subsequent. It is in this effect of the patent as a record of the government that its security and protection chiefly lie. If parties asserting interest in lands acquired since the acquisition of the country could deny and controvert this record, and compel the patentee, in every suit for his land, to establish the validity of his claim, his right to its confirmation, and the correctness of the action of the tribunals and officers of the United States in the location of the same, the patent would fail to be, as it was intended it should be, an instrument of quiet and security to its possessor. The patentee would find his title recog-

nized in one suit and rejected in another, and if his title were maintained, he would find his land located in as many different places as the varying prejudices, interests, or notions of justice of witnesses and jurymen might suggest. Every fact upon which the decree and patent rest would be opened to contestation. The intruder, resting solely upon his possession, might insist that the original claim was invalid, or was not properly located, and therefore he could not be disturbed by the patentee. No construction which will lead to such results can be given to the fifteenth section. The term 'third persons,' as there used, does not embrace all persons other than the United States and the claimants, but only those who hold superior titles, such as will enable them to resist successfully any action of the government in disposing of the property."

Plaintiffs in error deny the applicability of *Beard* v. *Federy* to the case at bar. We think it is applicable. They attempt to distinguish *More* v. *Steinback*. We think it cannot be distinguished. That case, it is said, depended upon the possible presence of "exceptional circumstances with reference to the sale to Poli which authorized the governor to make it (the grant)." And it hence contended that the court felt itself "bound to suppose such was the case *in the absence of any evidence to the contrary.* And taking for granted," counsel further say, "as it had to do, the jurisdiction of the board of commissioners that confirmed the Poli claim, the court could reach no other conclusion. But the very thing which this court was compelled to assume in the case of the Poli claim (namely, the jurisdiction of the land commissioners), for the want of *evidence to the contrary,* is the thing which in this case we offered to prove in the court below *did not exist;* but we were denied that privilege, and this denial we insist was error."

But how was it attempted to be shown that such jurisdiction did not exist? It was attempted to be shown, as declared in the assignment of error, by "the petition of said de Celis before the board of land commissioners for the confirmation of his claim to the land, together with copies of the grant from Governor Pico to him, and the decision of confirmation by the board."

There is nothing in either of those papers which show that exceptional circumstances with reference to the sale to de Celis did not exist.. The petition makes a claim of title based on "a deed of grant dated the seventeenth day of June of the year eighteen hundred and forty-six, by Pio Pico, constitutional governor of the Californias, thereto duly authorized by the supreme government of the nation and by a decree of the departmental assembly of April third, eighteen hundred and forty-six."

The decision of the board recites that Pio Pico testified that he had special instructions from his government to make the grant, and the decision further recites that "the genuineness of the grant is clearly established and the circumstances under which it was made so clearly explained as to leave no doubt but it was done in good faith."

The papers offered in evidence therefore, instead of showing the non-existence of special circumstances with reference to the sale to de Celis, which authorized the governor to make it, affirm the existence of those circumstances, and the contention of plaintiffs in error is reduced to this dilemma: The papers ruled out, the validity of the grant will be implied. The papers ruled in, the validity of the grant will be shown.

*Judgment affirmed.*