### UNITED STATES v. TITLE INS. & TRUST CO. et al.

(Circuit Court of Appeals, Ninth Circuit. April 16, 1923.)

No. 3856.

Indians ☞10—Right of occupancy of ceded Mexican lands held lost by failure to present claim to commission for settlement of Mexican land claims.

The Tejon Indians, who have occupied and used lands in California since before their acquisition by the United States, and who were protected in their right of occupancy by the laws of Spain and Mexico, and by the Mexican grant of a larger tract including theirs, *held* to have lost their rights by failure to present their claim to the commission created by Act March 3, 1851, when said commission confirmed the title of the Mexican grantees.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern Division of the Southern District of California; Oscar A. Trippet, Judge.

Suit in equity by the United States against the Title Insurance & Trust Company and others. Decree for defendants, and complainant appeals. Affirmed.

Joseph C. Burke, U. S. Atty., of Los Angeles, Cal., and George A. H. Fraser, Sp. Asst. Atty. Gen., for the United States.

O'Melveny, Millikin, Tuller & Macneil, of Los Angeles, Cal., for appellees.

Before GILBERT and RUDKIN, Circuit Judges, and DIETRICH, District Judge.

GILBERT, Circuit Judge. In the capacity of guardian of a band of Mission Indians, incompetent to manage their own affairs, known as the Tejon Indians, residing on a described tract of land in Kern county, Cal., the United States brought a suit against the appellees, seeking to have the original title of occupancy and possession of the land by the Indians confirmed and established as a species of easement founded on the grant of title to the lands .from the Mexican government, and to obtain compensation for alleged acts of wrong and oppression committed by the appellees, and to enjoin further molestation of the Indians. The particular subject of the suit is 5,364 acres within the boundaries of El Tejon rancho, consisting of 98,000 acres. The right of possession of the Indians is based upon allegations setting forth the following facts:

From time immemorial the land has been continuously occupied by the Tejon Indians, who have resided thereon in permanent dwellings, have raised crops and cattle, and have remained under the spiritual charge of the Catholic Church. Under the laws of Spain and Mexico they were entitled to the undisturbed possession and use of the land they occupied with the appurtenant water rights. Their right and title was protected by said laws until the land came under the jurisdiction of the United States. On May 30, 1843, two Mexicans petitioned the Mexican government of California for the grant of the region known as El Tejon. On June 30, 1845, the grant was finally approved. The grant contained the condition that the grantees must not interfere with the cultivation and other advantages which the Indians, who were found established in said place, had always enjoyed. After the treaty of Guadalupe Hidalgo (9 Stat. 922), the Mexican grantees petitioned the board of commissioners appointed under the Act of Congress of March 3, 1851 (9 Stat. 631), to settle private land claims, for confirmation of the grant. On May 8, 1855, the grant was confirmed. The board in its opinion, referring to the condition expressed in the original grant, said:

"This restriction, we have heretofore decided, does not affect the right of property, though it may create a use in favor of the Indians living on the land at the time the grant was made, to the extent actually occupied by them. This, however, is a question cognizable before another tribunal."

On successive appeals to the United States District Court and to the Supreme Court of the United States, the board's decision was affirmed. On May 9, 1863, a patent from the United States was issued conveying to said Mexican grantees the land, which includes the Indian tract. The granting clause contained the following:·

"But with the stipulation that in virtue of the fifteenth section of the said act [March 3, 1851] the confirmation of this claim and this patent shall not affect the interests of third persons."

By mesne conveyances the title so granted passed to the appellees. A motion of the appellees to dismiss the complaint for want of equity was sustained and a final decree of dismissal was entered.

It is contended that the court below erred in holding that the case at bar is governed by the decision in Barker v. Harvey, 181 U. S. 481, 21 Sup. Ct. 690, 45 L. Ed. 963. It is urged that the case is distinguishable from that case, in that in the latter it was found as a fact that, prior to the Mexican grant, the Indians who had dwelt within the confines thereof had abandoned their occupation, and the further fact that the grant, as finally allowed, contained no provision for their protection; whereas it is said in the case at bar the land has been continuously oc- cupied and is still occupied by the Tejon Indians, except as to parts thereof from which they have been wrongfully and forcibly expelled by the appellees, and the Mexican grant as finally confirmed con- tains a provision for the protection of said Tejon Indians. We find that the decision in Barker v. Harvey is explicitly grounded upon the fact that the Indians had failed to present to the land commission their claims of occupancy based upon the action of the Mexican government. Said the court:

"If these Indians had any claims founded on the action of the Mexican government they abandoned them by not presenting them to the commission for consideration."

In so deciding, the Supreme Court answered the contention that the Indians were wards of the government and were not chargeable with knowledge of the laws of the United States, or the statute creating and defining the functions of the land commission, and were therefore not required to present their claims to that commission. It is no answer to the ruling in Barker v. Harvey to say, as the appellant does, that the reasons set forth for the decision are dicta. We find them there ad- vanced as the express ground on which the court's conclusion was reached. Nor do we find in the opinion anything to justify the distinc- tion which is attempted to be made on the ground that in that case de- cision might have rested upon the fact that the Indians had before the date of the confirmation of their grants voluntarily abandoned their occupancy of the lands there in question. It is sufficient to say that the decision was not in fact based on that ground, but upon grounds and reasoning which are applicable to the facts alleged in the complaint in the present case, and if that reasoning is dictum it is for that court, and not for this, to say so. In fact, in one of the two cases there under consideration, the grant did contain words of protection of the Indians' rights. There is no escape from the conclusion that the presence of

such words of protection affords no excuse for failing to present the claim to the land commission, for it is well established by a line of decisions of the Supreme Court that any grant under the Mexican government is lost and abandoned, if not presented to the land commission. Botiller v. Dominguez, 130 U. S. 238, 9 Sup. Ct. 525, 32 L. Ed. 926.

In brief, the decision in Barker v. Harvey answers every contention now made by the appellant in the present case. It is a decision which is in harmony with, and in fact is foreshadowed by, prior decisions of the Supreme Court, such as Beard v. Federy, 3 Wall. 478, 18 L. Ed. 88, Botiller v. Dominguez, supra, Knight v. U. S. Land Association, 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974, and Thompson v. Los Angeles Farm & Milling Co., 180 U. S. 72, 21 Sup. Ct. 289, 45 L. Ed. 432.

The decree is affirmed.