## HOGAN v. UNITED STATES et al.
### No. 7272.

Circuit Court of Appeals, Ninth Circuit.

Aug. 29, 1934.

Ben C. Axley, of Los Angeles, Cal., and William H. Kiler, of San Francisco, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and Robert Winfield Daniels, Asst. U. S. Atty., both of Los Angeles, Cal.

Williamson & Musick, and George Martinson, all of Los Angeles, Cal., for appellee Title Co.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

GARRECHT, Circuit Judge.

This proceeding was instituted by the appellant and was designed to abrogate a patent issued by the United States for lands covered by a Mexican land grant. The claim and the Mexican grant were confirmed more than 75 years ago by the "Board of Commissioners," established by and acting in accordance with "An Act to ascertain and settle the private Land Claims in the State of California." Act March 3, 1851, c. 41, 9 Stat. 631. The patent was issued more than 60 years ago. The following is a statement of the case, largely adapted from the appellant's brief:

On October 7, 1852, Eulogio de Celis filed a petition before the Board of Commissioners, which, omitting caption and signatures, is in words and figures as follows, to wit:

"Before the Commissioners to ascertain and settle private land claims in the State of California—

"Eulogio Celis gives notice that he claims a tract of land situated in the present County of Los Angeles known by the name of Mission of San Fernando bounded as follows on the North by the Rancho of San Francisco on the west by the Mountains of Santa Susana on the East by the Rancho of Miguel Treinfa and on the South by the Mountains of Portescule which tract is supposed to contain fourteen square leagues.

"Said land was sold to the said Celis by a deed of grant dated the Seventeenth day of June of the year Eighteen hundred and forty six by Pio Pico Constitutional Governor of the Californias thereto duly authorized by the Supreme Government of the Nation and by a decree of the Departmental Assembly of April third Eighteen hundred and forty-six, said sale was made for the sum of fourteen thousand dollars which was paid by the said Celis to the said Pio Pico who acknowledged the receipt thereof as will more fully appear by reference to the aforesaid deed of grant, copy whereof marked A is hereto annexed together with a certified copy of the instructions from the Minister of War and Navy to the Governor of the Californias marked B and a certified copy of the Entry made in the archives of the former Spanish and Mexican Territory of Department of Upper California of the aforesaid and of grant marked C which said documents are hereto annexed.

"Claimant avers that the aforesaid deed of sale contains the condition that the Government of Mexico shall have the right to annul contract by reimbursing to this claimant the aforesaid sum of fourteen thousand dollars with the current rates of interest and in case said sum is not reimbursed within said Eight Months said Mission of San Fernando shall be his in full property and this claimant avers that said sum of fourteen thousand dollars was never reimbursed to him by the Mexican Government or by any person whatsoever.

"Said Mission of San Fernando was leased by the Government of Mexico to Andres Pico in December 1845 for the term of years which lessee has been in the occupancy of the said property up to the present date.

"Claimant further avers that he knows of no other claim to the aforesaid Mission and he relies on the documents above referred to and witnesses he shall produce to substantiate his claim."

The Exhibits A, B, and C, which are referred to in and attached to the petition and made a part of it, are, omitting caption and signatures, in words and figures as follows, to wit, Exhibit A:

"Translation

"The undersigned Constitutional Governor of the department of Californias In virtue of the powers vested unto him by the Supreme Government of the Nation and in virtue of a decree of the honorable departmental assembly of April third of the present year to raise means for the purpose of maintaining the integrity of the Territory of this department for the sum of fourteen thousand dollars which he receives sells unto Don Eulogio de Celis and his heirs the Ex Mission of San Fernando with all its properties Estates lands and moveables with the Exception of the Church and its appurtenances which remains for public use.

"Said purchaser obligating himself to maintain on their lands the old Indians on the premises during their lifetime with the right to make their crops with the only condition that they shall not have the right to sell the lands they cultivate and any other which they possess without anterior title from the departmental government for all of which the aforesaid Senor Celis shall be acknowledged as the legitimate owner of the aforesaid Ex Mission of San Fernando to use the same as to him shall seem best guaranteeing unto him as this Government does guarantee that he is all the prerogatives granted by law to purchasers with the only condition that the above mentioned purchaser shall not take possession within the space of Eight Months from the date hereof within which delay the Government shall have the right to annul this contract by reimbursing to the aforesaid Senor Celis the sum of Fourteen thousand dollars with interest at the current commercial rates but if this reimbursement is not operated within the aforesaid Eight Months this sale shall be valid.

"The above mentioned purchaser binds himself to warrant to the Father Minister of the aforesaid establishment his subsistence and clothing with all possible decency together with the rooms assigned to him or those which he justly requires.

"And for the establishment of this fact and the security of the purchaser the present document is issued and shall be acknowledged and respected by all the authorities of the department for its better accomplishment.

"And in faith of which the undersigned and Secretary of the Department grant their authority and affix their signatures in the City

of Los Angeles on this ordinary paper for want of stamped paper the seventeenth of June one thousand eight hundred and forty six."

Exhibit B, as follows:

"Translation

"To the General Commander of California. I this day communicate as follows—

"The preparations which the United States are making and the approach of their Naval forces towards our ports leave no doubt that War with that power is about breaking out and as His Excellency the President pro tem is resolved to sustain the rights of the Nation he wishes that in all the ports of the Republic where the enemy may present himself a vigorous defence be made capable of giving honor and glory to the National Flag.

"For that object and until the Supreme Government appropriates and sends you the necessary means he relies upon your patriotism and fidelity to dictate the measures which you may Judge necessary for the defence of that department for which purpose you and His Excellency are invested with full powers and I have the honor to insert the same to you for your cognisance hoping that you on your part will lose no efforts to preserve entire the rights of the Nation."

Exhibit C, as follows:

"Translation of Communication from the Minister of Justice.

"His Excellency the President has received information that the Governor of that Department has ordered that the property belonging to the Missions thereof be put up for sale at Public Auction, which your predecessor had ordered to be returned to the respective missionaries for the direction and administration of their temporalities; therefore he decreed proper to direct me to say that the said Governor will please to report upon these particulars, suspending immediately all proceedings respecting the alienation of the aforementioned property till the determination of the Supreme Government.

"I have the honor to communicate it to your Excellency for the purposes indicated protesting to you my consideration and esteem."

Thereafter, and on the 3d day of July, 1855, the Commission, sitting as a board, rendered and filed an opinion in the case, which, omitting caption and signatures, is as follows:

"Opinion of the Board delivered by Commiser. S. B. Farwell.

"This claim is based upon a grant issued to the claimant by Governor Pio Pico on the 17th day of June, 1846.

"The grant purports to have been made in consideration of the payment of the sum of fourteen thousand dollars in money.

"Pio Pico testifies that he executed the grant at the date that the same bears and that it was made under special instructions of his government for the purpose of raising the necessary funds to enable the department to prepare for a defence against the attack of the Americans and that the sum of fourteen thousand dollars was actually received by him from the guarantee in consideration thereof and that the funds were used by him for the benefit of the nation in the defence of the same.

"The genuineness of the grant is clearly established, and the circumstances under which it was made, so clearly explained as to leave no doubt but it was done in good faith.

"The grant contains a clause reserving the right of the government to annul the same at any time within eight months from the date thereof by refunding to the grantee the consideration money, together with the usual rate of interest thereon, which rate, if the transaction had been between individuals, changed the nature of the grant to that of a mortgage. But to apply the doctrine in this case would be in effect to compel the grantee to remain a mortgagee, without power to foreclose the mortgage against the government inasmuch as the government stands upon its sovereignty, not acknowledging the rights of individuals to have their actions of law against it, only in cases where provisions are made by special statute.

"We think the petitioner in this case is entitled to a confirmation and a decree will be entered accordingly."

Thereafter, and on the same date, the Commission, sitting as a board, entered the following decree of confirmation, to wit:

"Decree of Confirmation.

"In this case on hearing the proofs and allegations, it is adjudged by the Commission that the claim of the said petitioner is valid and it is therefore decreed that his application for a confirmation thereof be allowed.

"The land of which confirmation is hereby given is called the Ex-Mission of San Fernando, situate in the County of Los Angeles

and to be located the boundaries are known and recognized in the 17th day of June, 1846.

"Bounded on the north by the rancho called San Francisco, on the west by the mountains Santa Susana, on the east by the Ranch Miguel and on the South by the first Portescuelo."

On December 6, 1855, a duly certified transcript of the proceedings of the Board confirming the claim of the petitioner was filed in the office of the clerk of the United States District Court for the Southern District of California. Notice of appeal on the part of the United States was filed February 12, 1856, by the Attorney General, which was followed by a petition opposing the confirmation filed January 5, 1857.

Thereafter, certain proceedings were had in the United States District Court for the Southern District of California in said case, and on the 15th day of March, 1858, the court made and entered the following order:

"Final Order Dismissing Appeal.

"Now on this day come the appellant aforesaid by their Atty. E. J. C. Rowen, acting U. S. Atty., who reads and files a letter of the U. S. Atty. General showing to the Court that it is not the intention of the United States Govt. to prosecute further the said appeal; and moves the Court to dismiss said appeal and that appellee have leave to proceed under the decree of the land Commissioners heretofore rendered in his favor as a final decree.

"Which motion being heard and fully understood. It is therefore ordered that said appeal be dismissed. And that said appellee have leave to proceed under the decree of the said Commissioners in his favor as a final decree."

From February 17, 1860, to June 8, 1869, proceedings and litigation were had in the District Court with respect to the survey. The matter was definitely determined and the survey approved by the court on the last-named date, and, in pursuance thereof on the 18th day of January, 1871, a patent was issued to the said Eulogio de Celis covering the land in question.

On November 23, 1926, Emigene Kibbe filed her pre-emption application with the register of the land office, in Los Angeles, Cal., for the S. W. ¼ of Section 21, Township 1 North, Range 15 W., Los Angeles, Cal., and paid the fee prescribed by law therefor, obtaining pre-emption receipt No. 043,168. This land is a portion of that included in the patent to De Celis.

After hearing had, the register rejected the application, and appeal was taken to the Commissioner of the General Land Office, who likewise rejected the application.

On February 8, 1931, Emigene Kibbe died, and Lula C. Hogan was appointed executrix of her will, and, as such, appealed from the decision of the Commissioner of the General Land Office to the Secretary of the Interior, who, on September 26, 1931, sustained the ruling of the register and Commissioner, rejecting the pre-emption application.

On April 6, 1933, appellant filed a petition in the United States District Court for the Southern District of California, alleging the facts hereinbefore set forth, whereby she seeks to reopen the original case, Old Land Appeals (Docket No. 378), and attempts to have set aside the judgment entered therein, which became final on March 15, 1858. Neither the petitioner, appellant here, nor the appellee Title Insurance & Trust Company was a party in the original case No. 378. No motion was made to intervene, and there was no attempt to bring before the court the original claimant or his heirs. Subpœna in equity was issued and served upon the Title Insurance & Trust Company and the United States attorney for the Southern District of California. The Title Insurance & Trust Company, appellee, moved to dismiss the petition, and the United States District attorney moved to quash the subpœna and service upon the ground that no authority in law or equity exists for the issuance or service of said subpœna in said matter upon the United States of America, it being urged that appellant, not being a party to the old case, was without right, many years after the term at which the judgment was entered had expired, to come in as an intervener or petitioner and seek to vacate the judgment; that appellant had not procured leave to appear in the old case, but was seeking surreptitiously to intervene in said action, thereby seeking in effect to make the United States a party defendant in her new action, and thus evade the law that the United States may not be sued without its consent. From the order of the District Court sustaining these motions, this appeal has been prosecuted.

It is the contention of the appellant that the attempted sale or conveyance of the land consisting of and comprising lands of the Mission San Fernando, by deed of grant from the Mexican governor to De Celis, was void from its inception; that it conferred no right or title upon De Celis under the laws of Mexico; that, being a nullity upon its face, it

could not and did not form the foundation or basis for any proceeding before the commission, and the court was without jurisdiction to ascertain, settle, or confirm this nonexisting claim. It is further contended by appellant: "That the petition filed by de Celis, first, before the Commission, and secondly, before the Court, being based upon and having attached to and made an integral part of it, the alleged deed of grant from the Mexican Governor to de Celis, together with the instruments upon which the Governor relied for the authority to make the sale, alleging and being admitted by the rules of pleading, proving a violation of law, and not in compliance with it, conferred no authority or jurisdiction upon the Commission, sitting as a Board, nor the Court, to proceed to render the judgment of confirmation complained of, nor to order the execution of the patent to de Celis; that said petition of de Celis so filed, disclosed upon its face the tenure by which the lands of the Mission of San Fernando were held, and claimed; that it disclosed upon its face that possession of said Mission and lands were claimed by Andreas Pico, under a lease made in 1845, and that the residuary estate therein, including the fee, was claimed by said de Celis; that when the record before said Commission, sitting as a Board, disclosed these facts, the law forbade the Board from the exercise of any power or jurisdiction to proceed in said matter, other than to dismiss the petition and report the tenure by which these Mission lands were claimed, to the Secretary of the Interior; that section 16 of the act of March 3, 1851 compelled the Board so to do." The portions of the act of March 3, 1851, c. 41, 9 Stat. 631, pertinent to this discussion, will be found in the footnote.[1]

[1] Sec. 8. And be it further enacted, That each and every person claiming lands in California by virtue of any right or title derived from the Spanish or Mexican government, shall present the same to the said commissioners when sitting as a board, together with such documentary evidence and testimony of witnesses as the said claimant relies upon in support of such claims; and it shall be the duty of the commissioners, when the case is ready for hearing, to proceed promptly to examine the same upon such evidence, and upon the evidence produced in behalf of the United States, and to decide upon the validity of the said claim, and, within thirty days after such decision is rendered, to certify the same, with the reasons on which it is founded, to the district attorney of the United States in and for the district in which such decision shall be rendered.

Sec. 9. And be it further enacted, That in all cases of the rejection or confirmation of any claim by the board of commissioners, it shall and may be lawful for the claimant or the district attorney, in behalf of the United States, to present a petition to the District Court of the district in which the land claimed is situated, praying the said court to review the decision of the said commissioners, and to decide on the validity of such claim; and such petition, if presented by the claimant, shall set forth fully the nature of the claim and the names of the original and present claimants, and shall contain a deraignment of the claimant's title, together with a transcript of the report of the board of commissioners, and of the documentary evidence and testimony of the witnesses on which it was founded; and such petition, if presented by the district attorney in behalf of the United States, shall be accompanied by a transcript of the report of the board of commissioners, and of the papers and evidence on which it was founded, and shall fully and distinctly set forth the grounds on which the said claim is alleged to be invalid, a copy of which petition, if the same shall be presented by a claimant, shall be served on the district attorney of the United States, and, if presented in behalf of the United States, shall be served on the claimant or his attorney; and the party upon whom such service shall be made shall be bound to answer the same within a time to be prescribed by the judge of the District Court; and the answer of the claimant to such petition shall set forth fully the nature of the claim, and the names of the original and present claimants, and shall contain a deraignment of the claimant's title; and the answer of the district attorney in behalf of the United States shall fully and distinctly set forth the grounds on which the said claim is alleged to be invalid, copies of which answers shall be served upon the adverse party thirty days before the meeting of the court, and thereupon, at the first term of the court thereafter, the said case shall stand for trial, unless, on cause shown, the same shall be continued by the court.

Sec. 13. And be it further enacted, That all lands, the claims to which have been finally rejected by the commissioners in manner herein provided, or which shall be finally decided to be invalid by the District or Supreme Court, and all lands the claims to which shall not have been presented to the said commissioners within two years after the date of this act, shall be deemed, held, and considered

The questions discussed on this appeal might be interesting from a legal aspect were it not for the fact· that the courts have so frequently passed upon them that they must be regarded as fully settled. It remains for us only to point out these decisions and apply them to the case at bar. Mr. Justice Field, who was an outstanding authority on the law involved in these Mexican land grants, and who many times had occasion to construe the meaning and effect of proceedings under this act of March 3, 1851, in an opinion confirming a title in the case of Brown v. Brackett, 21 Wall. 387, 389, 22 L. Ed. 622, concluded his opinion as follows: "Every conceivable point respecting these grants, their validity, their extent, and the operation of decrees confirming claims to land under them, has been frequently examined; and the law upon these subjects has been repeated even to wearisomeness."

The court is not here concerned whether errors were committed in the decree of confirmation entered by the Board of Land Commissioners on July 3, 1855, or in the judgment of the District Court entered March 15, 1858;

such errors, if any, could be reviewed only on appeal to reverse the decree or judgment. The attack upon the judgment and the patent issued by the United States in pursuance thereof is rested solely upon the contention that it appears upon the face of the records of the court that it was without jurisdiction to hear and determine the De Celis claim, and that therefore the grant of the lands conveyed by the patent was void, as being in excess of jurisdiction.

■ The Board of Land Commissioners as well as the District Court has jurisdiction of the subject-matter as well as of the parties, and, this being true, the judgment and the patent are not subject to the attack here made. By the act the powers conferred on the Board and on the court afforded a system of complete adjudication of claims of land in California "by virtue of any right or title derived from the Spanish or Mexican government." (Section 8 of the act). If the claim set forth in the petition of the applicant, whatever the merits thereof might have been, was for a right or title derived from the Spanish or Mexican governments, it was of the

as part of the public domain of the United States; and for all claims finally confirmed by the said commissioners, or by the said District or Supreme Court, a patent shall issue to the claimant upon his presenting to the general land office an authentic certificate of such confirmation, and a plat or survey of the said land, duly certified and approved by the surveyor-general of California, whose duty it shall be to cause all private claims which shall be finally confirmed to be accurately surveyed, and to furnish plats of the same; and in the location of the said claims, the said surveyor-general shall have the same power and authority as are conferred on the register of the land office and receiver of the public moneys of Louisiana, by the sixth section of the act "to create the office of surveyor of the public lands for the State of Louisiana," approved third March, one thousand eight hundred and thirty-one: Provided, always, That if the title of the claimant to such lands shall be contested by any other person, it shall and may be lawful for such person to present a petition to the district judge of the United States for the district in which the lands are situated, plainly and distinctly setting forth his title thereto, and praying the said judge to hear and determine the same, a copy of which petition shall be served upon the adverse party thirty days before the time appointed for hearing the same. And provided, further, That it shall and may

be lawful for the district judge of the United States, upon the hearing of such petition, to grant an injunction to restrain the party at whose instance the claim to the said lands has been confirmed, from suing out a patent for the same, until the title thereto shall have been finally decided, a copy of which order shall be transmitted to the commissioner of the general land office, and thereupon no patent shall issue until such decision shall be made, or until sufficient time shall, in the opinion of the said judge, have been allowed for obtaining the same; and thereafter the said injunction shall be dissolved.

Sec. 15. And be it further enacted, That the final decrees rendered by the said commissioners, or by the District or Supreme Court of the United States, or any patent to be issued under this act, shall be conclusive between the United States and the said claimants only, and shall not affect the interests of third persons.

Sec. 16. And be it further enacted, That it shall be the duty of the commissioners herein provided for to ascertain and report to the Secretary of the Interior the tenure by which the mission lands are held, and those held by civilized Indians, and those who are engaged in agriculture or labor of any kind, and also those which are occupied and cultivated by Pueblos or Rancheros Indians.

type which the Commissioners were granted power to hear and the court had jurisdiction to determine. Such application being presented, the Board had jurisdiction over the claim, and it was the "duty of the commissioners * * * to examine the same * * * and to decide upon the validity of the said claim." Section 8 of the act. Section 9 provides the procedure for appeal to the District Court, and section 10 confers jurisdiction on said court to proceed to render judgment, which may be further appealed to the Supreme Court of the United States. A full examination of the act discloses that it was its purpose, and that it did furnish a complete method for the adjudication of these claims.

In support of her contention that the Commission and the District Court were without jurisdiction in the premises, appellant cites U. S. v. Workman, 1 Wall. 745, 17 L. Ed. 705, and U. S. v. Jones, 1 Wall. 766, 17 L. Ed. 712. As we view these decisions, they afford no support for appellant's position. Both cases went to the Supreme Court of the United States by direct appeal from the decree of the District Court, which had confirmed the decree of the Board of Land Commissioners confirming grants to the defendants of mission lands. It is noteworthy that in each of these cases jurisdiction of the court was not challenged; all the proceedings were taken upon the assumption that the Commission and the District Court and the Supreme Court had jurisdiction to determine the issues raised. The Supreme Court in a direct appeal reversed the decisions, not on the ground that the Board or the District Court was without jurisdiction, but for the reason that it appeared from the showing made that the authority of the governor of California to grant unoccupied public lands could not be enlarged by the departmental assembly under Mexican law so as to empower him to dispose of lands of the Mission San Gabriel and of the Mission San Luis Rey.

That these decisions cited are of no value to sustain appellant's position here fully appears in the case of Thompson v. Los Angeles Farming & Milling Co., 180 U. S. 72, 21 S. Ct. 289, 291, 45 L. Ed. 432, in which case, as here, the lands involved were a part of the Ex-Mission of San Fernando, and the patent attacked was the very same one issued to De Celis which is here being assailed upon the same contention that "said commissioners were wholly without jurisdiction to adjudicate upon or to confirm said claim." The Supreme Court of the United States, however, confirmed the decision of the Supreme

Court of California (117 Cal. 594, 49 P. 714), and sustained the jurisdiction of the Commission, and held the patent valid. The opinion in this case answers practically every contention here made.

The case of Beard v. Federy, 3 Wall. 478, 489, 18 L. Ed. 88, also cited by appellant, likewise fails to sustain her position. In that case, under the act here discussed, Alemany, Bishop of Monterey, presented his petition to the Commissioners for confirmation of a claim which he made to certain lands described by him. It averred in substance that by the laws of Spain from time immemorial and by the laws of the republic of Mexico at the time of the cession of California to the United States, and by the canon law, he was entitled to the property described, in which he had been in the actual and undisturbed possession since the year 1797.

The Board confirmed the claim of the bishop, and, as in the case at bar, the Attorney General subsequently gave notice that an appeal would not be prosecuted in the case, and the District Court ordered, adjudged, and decreed that the claimant have leave to proceed under the decree of the United States Land Commission theretofore rendered in his favor as a final decree. Thereupon a patent issued to the bishop from the United States.

Of the same land thus the subject of confirmation and patent to the Bishop of Monterey, one of the governors of California on the 20th day of June, 1846, Mexico then being invaded by the United States, made a grant to a certain Castenada and others, the grant reciting on its face the authority by which the governor claimed to act.

Upon this state of titles Federy claimed the property through the patent of the Bishop of Monterey, and brought ejectment against Baird, who relied upon the title derived from the deed of the California Governor. It was argued that the petition of the Bishop of Monterey was not sufficient to show any claim "by virtue of any right or title derived from the Spanish or Mexican Government," and also that, the lands in question being mission lands under section 16 of the act, the Commissioners were deprived of power to pass upon the validity of the claim of the Bishop; that the Commissioners were limited "to ascertain and report" to the Secretary of the Interior the tenure by which the missionary lands were held, and that in adjudicating the claim the Board had acted without its jurisdiction and its action was void, and that therefore the patent founded on its void action was a nullity. The court held that the averment in the

claim of the bishop clearly presented a case within the jurisdiction of the Board of Commissioners, and, continuing, said:

" * * * They show 'a claim by virtue of a right or title derived from the Spanish or Mexican government,' which is all that is required by the act of 1851. That act does not define the character of the right or title, or prescribe the kind of evidence by which it shall be established. It is sufficient that the right or title is derived from the Spanish or Mexican government, and it may in some instances rest in the general law of the land, as is the case usually with the title of municipal bodies, under the Spanish and Mexican systems, to their common lands.

"The board having acquired jurisdiction, the validity of the claim presented, and whether it was entitled to confirmation, were matters for it to determine, and its decision, however erroneous, cannot be collaterally assailed on the ground that it was rendered upon insufficient evidence. The rule which applies to the judgments of other inferior tribunals applies here,—that when it has once acquired jurisdiction its subsequent proceedings cannot be collaterally questioned for mere error or irregularity."

Appellant further insists that under section 16 of the act, when the claim involved mission lands, the Commissioner and the District Court were without power to determine title, but that all the Board of Commissioners could do was "to ascertain and report" to the Secretary of the Interior the tenure by which these lands were held, and, if they went beyond that to any extent, their action was void.

■ The argument proceeds upon the assumption that the lands conveyed by the patent here in question were mission lands, and that the records before the District Court so show. The facts are, as the exhibits show, that during the progress of the surveys that were being made in accordance with the law and the decree eight tracts of land at the Mission San Fernando were claimed by and awarded to J. S. Alemany, Bishop, etc., and this claim was set off by metes and bounds, as was also another claim to Rancho El Encino. It thus appears that the bishop presented his claim to the Board of Commissioners which was not for the lands embodied in the patent, which would take them out of the provisions of this section. In any event, it is settled law that the Board of Commissioners and the District Court had jurisdiction even of Mission lands. Beard v. Federy, supra; Barker v. Harvey, 181 U. S. 481, 21 S. Ct. 690, 45 L. Ed. 963; U. S. v. Title Insurance & Trust Co., 265 U. S. 472, 44 S. Ct. 621, 68 L. Ed. 1110.

■ Finally, it appears from the petition in this case that the appellant's only claim of right is based upon an application for homestead entry made by the deceased testatrix. In other words, whatever claim she has is subsequent to the patent and depends upon privity with the government. It follows that, if the United States could bring no action to set aside the patent, appellant could not. The Act of March 3, 1891 (26 Stat. 1099, 43 US CA § 1166), reads: "Suits by the United States to vacate and annul any patent shall only be brought within six years after the date of the issuance of such patents." It is argued by the appellant that the De Celis patent was issued under a special act of Congress, and that the above law is not applicable here. But section 15 of this Act of March 3, 1851, among other things, provides that: "Any patent to be issued under this act, shall be conclusive between the United States and the said claimants only, and shall not affect the interest of third persons." Thus, while any one having an adverse claim at the time of the issuance of the patent is not precluded from asserting his right, the United States is barred, as well as those claiming through the United States.

The patent was for land which, if not covered by the Mexican grant, was public land subject to disposal or sale by the United States. As in the case of Beard v. Federy, supra, appellant's position rests upon a misapprehension of the character and effect of a patent issued upon a confirmation of a claim under this act.

" * * * The patent is a deed of the United States. As a deed, its operation is that of a quit-claim, or rather of a conveyance of such interest as the United States possessed in the land, and it takes effect by relation at the time when proceedings were instituted by the filing of the petition before the Board of Land Commissioners.

" * * * When informed, by the action of its tribunals and officers, that a claim asserted is valid and entitled to recognition, the government acts, and issues its patent to the claimant. This instrument is, therefore, record evidence of the action of the government upon the title of the claimant. By it the government declares that the claim asserted was valid under the laws of Mexico; that it was entitled to recognition and protection by the stipulations of the treaty, and might have been located under the former government,

and is correctly located now, so as to embrace the premises as they are surveyed and described. As against the government this record, so long as it remains unvacated, is conclusive. And it is equally conclusive against parties claiming under the government by title subsequent. * * * " Beard v. Federy, supra.

Any further discussion is deemed unnecessary. The meaning and effect of the statutes, the jurisdiction of the Board of Land Commissioners, and all questions as to the validity and conclusiveness of these patents have been settled by numerous court decisions. Thompson v. Los Angeles F. & M. Co., 180 U. S. 72, 21 S. Ct. 289, 45 L. Ed. 432; Beard v. Federy, 3 Wall. 478, 18 L. Ed. 88; More v. Steinbach, 127 U. S. 70, 8 S. Ct. 1067, 32 L. Ed. 51; Botiller v. Dominguez, 130 U. S. 238, 9 S. Ct. 525, 32 L. Ed. 926; U. S. v. Title Ins. & Trust Co., 265 U. S. 472, 44 S. Ct. 621, 68 L. Ed. 1110. Indeed, the law upon the subject has become a rule of property as long ago as Minnesota Min. Co. v. National Min. Co., 3 Wall. 332, 334, 18 L. Ed. 42, wherein the Supreme Court of the United States said: "Where questions arise which affect titles to land it is of great importance to the public that when they are once decided they should no longer be considered open. Such decisions become rules of property, and many titles may be injuriously affected by their change. Legislatures may alter or change their laws, without injury, as they affect the future only; but where courts vacillate and overrule their own decisions on the construction of statutes affecting the title to real property, their decisions are retrospective and may affect titles purchased on the faith of their stability. Doubtful questions on subjects of this nature, when once decided, should be considered no longer doubtful or subject to change. * * *"

Affirmed.