[Civ. No. 2336. Fourth Appellate District.—July 12, 1939.]

MARTHA W. SHELLEY, Respondent, v. ARTHUR M. HURWITZ et al., Appellants.

Herbert C. Kelly and Milborne Bross for Appellants.

Lindley & Higgins and J. F. Du Paul for Respondent.

BARNARD, P. J.—This is an action to quiet title to a lot in the city of San Diego which was formerly a part of the pueblo lands acquired by that city as the successor of the Pueblo of San Diego. From a judgment in favor of the plaintiff the defendants appeal.

On March 18, 1850, Thomas W. Sutherland, as Alcalde of San Diego, deeded a certain tract to six persons. On July 17, 1850, and on September 12, 1850, partition deeds were executed purporting to divide all lots in this tract between the owners thereof, both deeds alloting the property here in con-

troversy to one Jose Antonio Aguirre. On September 12, 1850, Aguirre quitclaimed this lot to the United States of America, which remained in possession thereof from 1850 to 1934, using it, in connection with other property, for barracks. In 1934, the United States sold the property to the respondent, pursuant to an act of Congress passed in 1926 (44 Stats. 203), giving her a quitclaim deed.

The appellants obtained a quitclaim deed to this lot from the city of San Diego on August 18, 1920, and in this action maintained that any interest in the property which the United States acquired through the deed from Aguirre was reconveyed to the city of San Diego by a patent issued on April 10, 1874.

Under the treaty of Guadalupe Hidalgo the title to all lands in California not held in private ownership passed to the government of the United States. Under that treaty, as well as by the law of nations, the United States was bound to protect private rights which had been acquired. Under an act of Congress passed on March 3, 1851 (9 Stats. 631 [U. S.]) suitable provision for this was made by a tribunal thus established and, with the assistance of the courts, such claims of title were to be considered and when allowed were to be confirmed by a patent. Pursuant to this act, on February 14, 1853, the city of San Diego on behalf of itself and of all persons to whom it had conveyed, presented to the board of commissioners thus established its claim to such pueblo lands. A decision was rendered on January 28, 1856, confirming the city's title, which was affirmed on appeal. Pursuant thereto, the patent above referred to was issued by the United States to the city on April 10, 1874. This patent recites that a petition had been filed pursuant to the act of 1851 asking confirmation of title to these pueblo lands, that the board of commissioners had rendered a decree of confirmation in favor of the claimant, and that this patent was given pursuant to the provisions of the act.

The main question presented is as to the effect of this patent upon the title to this lot which the United States had theretofore acquired by deed from a vendee of the city. The appellants contend that it had the effect of a quitclaim deed and that in addition to confirming the title which the city of San Diego had acquired as the successor of the Pueblo of San Diego, it also conveyed any interest which the United

States then held, including any interest acquired from those to whom the city had conveyed. On the other hand, the respondent contends that this patent merely confirmed the original rights of the city as successor in interest to the Pueblo; that under the treaty, the act of Congress and the patent, the rights of previous purchasers from the city were protected and confirmed; that the rights of the government as successor to vendees of the city were likewise confirmed; and that the patent did not reconvey or transfer to the city any title or interest with which the city had already parted.

The appellants cite and rely upon a number of cases in which such a patent is referred to as having the effect of a quitclaim, as being conclusive against the government, and as being equally conclusive against parties claiming under the government by title subsequent. (*Beard* v. *Federy,* 70 U. S. (3 Wall.) 478 [18 L. Ed. 88]; *Knight* v. *United Land Assn.,* 142 U. S. 161 [12 Sup. Ct. 258, 35 L. Ed. 974]; *United States* v. *Coronado Beach Co.,* 274 Fed. 230; *Thompson* v. *Los Angeles F. & M. Co.,* 180 U. S. 72 [21 Sup. Ct. 289, 45 L. Ed. 432]; *De Guyer* v. *Banning,* 167 U. S. 723 [17 Sup. Ct. 937, 42 L. Ed. 340].) The point relied upon by the appellants is sufficiently set forth in the case of *Beard* v. *Federy, supra.* In that case, the court said:

*"In the first place, the patent is a deed of the United States. As a deed, its operation is that of a quitclaim, or rather of a conveyance of such interest as the United States possessed in the land;* and it takes effect by relation at the time when proceedings were instituted by the filing of the petition before the Board of Land Commissioners. . . .

"In the second place, the patent is a record of the action of the government upon the title of the claimant as it existed upon the acquisition of the country . . . By the Act of March 3, 1851, they have declared the manner and the terms on which they will discharge this obligation. They have there established a special tribunal, before which all claims to land are to be investigated; required evidence to be presented respecting the claims; appointed law officers to appear and contest them on behalf of the Government; authorized appeals from the decisions of the tribunal, first to the District and then to the Supreme Court; and designated officers to survey and measure off the land when the validity of the claims is finally determined. When informed, by the action of its tri-

bunals and officers, that a claim asserted is valid and entitled to recognition, the Government acts, and issues its patent to the claimant. . . . By it the Government declares that the claim asserted was valid under the laws of Mexico; . . . *As against the Government this record, so long as it remains unvacated, is conclusive. And it is equally conclusive against parties claiming under the Government by title subsequent.* It is in this effect of the patent as a record of the Government that its security and protection chiefly lie. If parties asserting interests in lands acquired since the acquisition of the country could deny and controvert this record and compel the patentee, in every suit for his land, to establish the validity of his claim, his right to its confirmation, and the correctness of the action of the tribunals and officers of the United States in the location of the same, the patent would fail to be, as it was intended it should be, an instrument of quiet and security to its possessor.'' (Italics ours.)

While the opinion in that case states that such a patent is a conveyance of such interest as the United States possessed in the land it is also pointed out that the patent is issued by way of confirmation of a claim arising under the laws of Mexico, that by the patent the government declares that the claim asserted was valid under the laws of Mexico, and that such a patent is conclusive evidence of the validity of such a claim under the laws of Mexico, both as against the government and as against parties claiming under the government by title subsequent. There was no granting clause in the act of March 3, 1851, and nothing therein authorizing the granting of any title through the machinery therein provided for or through the patent which was to be issued. It was pointed out in *Phillips* v. *Mound City L. & W. Assn.,* 124 U. S. 605 [8 Sup. Ct. 657, 31 L. Ed. 588], that by the patents issued in pursuance to that act the United States invested the patentees with the legal title which had passed under the treaty from the Mexican government to that of the United States, and that the patents are conclusive with respect to such title. As was said in *Rodriquez* v. *United States,* 68 U. S. (1 Wall.) 582 [17 L. Ed. 689] : ''The primary object of the act (of March 3, 1851) was to ascertain and separate the public domain from that which had become, under the Mexican government, private property.'' This patent was conclusive evidence that this land was not a part of the public domain and it confirmed

the city's claim which had arisen under Mexican law. As evidence of such confirmation it conveyed the legal title which had by treaty passed to the United States government. While it was conclusive as against any title acquired by the United States under the treaty, and as against any claim which the United States might assert in opposition to and in disregard of such title, it does not follow that it was conclusive as against a title which the government had acquired through conveyances from the patentee and in full reliance upon the validity of the patent and the rights which it confirmed. While the land was no longer a part of the public domain the government, like an individual, could acquire title thereto from the patentee or from one to whom the patentee had sold it. The only difficulty in this case arises from the fact that such a title had been acquired by the government before the patent was issued. Because of this fact it is now claimed that the patent had the effect of a quitclaim deed and not only confirmed the previous title of the city but also reconveyed to the city a part of this land which the city had in good faith sold, and this merely because the purchasers from the city had sold to the government before the patent was issued, which was more than twenty-five years after the city's title had originated.

Certain cases throw some light upon our present problem. In *Hart* v. *Burnett*, 15 Cal. 530, it is pointed out that the effect of such a patent covering public lands is not a concession or grant by the government but simply an acknowledgment of an existing right. It is there said:

"The result of this reasoning is, that upon this hypothesis, independently of all original claims of the city to the grant of lands to the old pueblo, her predecessor, she has the title to them, not by a concession of the lands by the Federal Government, but by a concession by that Government of such a state of proofs of an anterior title, as establishes such title against that Government, the only other claimant. But she stands on this title, not as a title *granted* by the Federal Government, but as a title acknowledged by that Government."

In *Leese* v. *Clark*, 18 Cal. 535, in discussing the fourteenth section of the act of 1851, which authorized the city to present a claim both on behalf of itself and every lot owner deriving title from the city, the court said:

"The evident object of this section was to aid lot holders who claimed title from a common source—from the authorities

of a pueblo or town, or from an individual who was originally the grantee of the land upon which the pueblo or town was built—and to prevent the necessity on the part of the Commissioners of considering a multitude of separate individual claims for small tracts, all of which depended upon the validity of the same original title. The confirmation of the common title in such cases would of course inure to the benefit of all parties holding under the claimants, for between them there would exist privity of estate.''

In *Boquillas Land & Cattle Co.* v. *Curtis,* 213 U. S. 339 [29 Sup. Ct. 493, 53 L. Ed. 822], the court, speaking through Mr. Justice Holmes, said:

''The plaintiff draws another argument from the effect of the United States patent. It contends that the patent not only confirms the Mexican title, but releases that of the United States (*Beard* v. *Federy,* 3 Wall, 478, 491 [18 L. Ed. 88, 92]), and that, by the grant from the United States, it gained rights as a riparian proprietor that could not be displaced by a subsequent attempt to appropriate the water (*Sturr* v. *Beck,* 133 U. S. 541 [33 L. Ed. 761, 10 Sup. Ct. 350]). But, while it is true that in *Beard* v. *Federy, supra,* Mr. Justice Field calls such a patent a quitclaim, we think it rather should be described as a confirmation in a strict sense. . . . It is not to be understood that when the United States executes a document on the footing of an earlier grant by a former sovereign, it intends or purports to enlarge the grant.''

In *Los Angeles Farming & M. Co.* v. *Los Angeles,* 217 U. S. 217 [30 Sup. Ct. 452, 54 L. Ed. 736], it is said: ''And whatever the rule may be as to patents conveying title to the lands of the United States, it has been distinctly held in this court that neither the treaty of Guadalupe Hidalgo nor patents under the act of March 3, 1851, are original sources of private titles, but are merely confirmatory of rights already accrued under a former sovereignty.''

We think it follows that the patent here in question did not have the effect of a quitclaim deed in the sense here contended. It merely confirmed the rights which had accrued to the city as the successor of the pueblo. While it confirmed those rights· it did not purport to cover or affect rights which the city had already conveyed to individuals and which had, in turn, been conveyed by them to the United States. Section 14 of the act of 1851 provided that the rights of individuals

to whom the city had conveyed should be covered and protected by the application for confirmation made by the city. This was here done and the patent issued inured to the benefit of such vendees. As the successor of such vendees the title of the government was also confirmed. As a purchaser from the government the respondent here is not attacking the patent which was issued but is relying upon it. While the patent was conclusive evidence that the land was not a part of the public domain, nothing therein or in the proceeding upon which it was based made it effective as conveying the title which the government had acquired from grantees of the city. The entire proceeding which gave rise to the patent was designed to and did pass upon the original title as of the time when the land was ceded to the United States, and as to whether the land had become a part of the public domain, but it was not designed to and did not adversely affect the rights and titles of those to whom the city had conveyed and their successors in interest. While the patent in question confirmed the city's original title it cannot be interpreted as having given back to that city a title to lots which had already been conveyed by the city to others. The entire proceedings leading up to the patent were designed to settle such land titles as those which were here claimed by and confirmed in the city, including the rights of the city's vendees for whom it also acted, and it was never intended that the very act of confirming the title of the city's vendee should have the effect of destroying such titles and reconveying such property to the city.

The appellants further contend that, in any event, the respondent failed to establish her title to all of the lot in question. It is argued that the partition deeds of July 17, 1850, and September 12, 1850, were invalid, that the deed from Aguirre to the United States therefore conveyed only his one-sixth interest in the property, and that the deed from the United States to the respondent could convey no more. ■ Ordinarily a plaintiff in a quiet title action must trace his title to a patentee or at least to a grantor in possession. A recognized exception exists where both parties are relying upon a common source of title. (*Sorensen* v. *Hall*, 219 Cal. 680 [28 Pac. (2d) 667] ; *Central Nat. Bank* v. *Bell*, 5 Cal. (2d) 324 [54 Pac. (2d) 1107] ; *Berte* v. *Luse*, 216 Cal. 251 [13 Pac. (2d) 910].) ■ The respondent here relies upon a deed

from the United States. While one of the appellants' predecessors was the city of San Diego, since that city had previously conveyed the property it became and was necessary for the appellants to establish that the city had subsequently acquired title, if they were to prevail in the action. To this end and to establish the fact that title had been reconveyed to the city they rely upon the patent issued in 1874 and their entire claim to the property depends upon the meaning and effect of that patent. It thus appears that they are relying, in this action, upon what they claim is a conveyance from the United States. A further consideration is that all of the evidence is not before us. The bill of exceptions describes certain instruments which were received in evidence and states that it was stipulated that the plaintiff was in possession of the property. It neither professes to summarize all of the evidence received nor states that none was received other than that which is set forth. The government was in possession of the property for some eighty years and any defects in its title may have been cured by evidence sufficient to establish title by adverse possession.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 10, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 5, 1939.